Affirmed and Memorandum Opinion filed March 20, 2007








Affirmed and Memorandum Opinion filed March 20, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00204-CR

____________

 

CARLOS ALDAIR LEIBA FUGON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 337th
District Court

Harris County, Texas

Trial Court Cause No. 1029292

 



 

M E M O R A N D U M  O P I N I O N

Challenging his conviction for aggravated assault,
appellant Carlos Aldair Leiba Fugon asserts the evidence is factually
insufficient to support his conviction.  We affirm. 

I.  Factual and Procedural
Background








On the night of May 24, 2005, the complainant, Samuel
Bonilla and his girlfriend, Yvette Lopez went to dinner to celebrate Yvette=s birthday.  After
dinner, Samuel brought Yvette to her aunt=s home, where
Yvette resided.  Sometime later, Samuel and his brother Luis returned to Yvette=s aunt=s house to
retrieve Yvette and then go to Luis=s and his wife=s apartment to
spend the night.  All three of them arrived at Luis=s apartment
complex sometime after midnight, but Luis did not have his gate entry card with
him.  Luis and his wife shared one entry card to the apartment complex and his
wife, who kept it most of the time, had the card that evening.  Therefore, Luis
parked the vehicle on the street outside the apartment complex and they waited
for another vehicle to arrive so that they could enter the complex behind that
other vehicle.  About twenty to twenty-five minutes later, another vehicle,
driven by appellant,  pulled up to the gate of the apartment complex.  Luis
followed the vehicle in the hope of gaining access to the apartment complex. 
The driver of the other vehicle, however, did not use a card to gain access but
instead parked in a space outside the gate.  

Samuel got out of his vehicle and walked up to other
vehicle.         Appellant exited his vehicle, and Samuel asked him if he had
an entry card to the apartment complex.   Appellant responded that he did and
then walked to the back of his vehicle and removed a long object wrapped in a
white sheet or towel.  Appellant was clearly angry, and Samuel immediately
realized that the object was a twelve-gauge shotgun.  Appellant then stated, AYou want your fCg pass, you son of
a....,@  and began to
wave the shotgun at Samuel and the others.  Appellant fired the shotgun into
the air.   Luis moved toward Samuel and the appellant fired the shotgun at
Samuel=s feet.[1]


Yvette started to run toward the main office of the
apartment complex.  She heard a gunshot followed by a second gunshot. Yvette
turned to see that Samuel had been shot in the shoulder.  Wounded, Samuel tried
to walk toward Yvette; he told her that he could not breathe. Yvette instructed
Luis to stay with his brother while she went to look for  help.   At that
point, Yvette noticed a female passenger in appellant=s car getting into
the driver=s seat of the vehicle and driving it into the
street.   Appellant picked up the fired shotgun shells and then got into the
vehicle, and they drove away.  








Shortly thereafter, emergency medical personnel arrived at
the apartment complex, and Samuel was transported to the hospital, where he
died within hours.  The autopsy report revealed that he had received a wound
from a shotgun to the upper, right side of his chest.  The shotgun pellets
broke Samuel=s collarbone, and they ruptured two major blood
vessels near Samuel=s heart, and also caused severe internal
bleeding. 

As part of the police investigation that followed,
Detective Jose Selvera with the Houston Police Department obtained information
concerning the vehicle driven by appellant and located the same vehicle at the
apartment complex where the murder occurred.  Detective Selvera discovered that
the vehicle was registered to appellant=s girlfriend,
Irene Asian.  One of the doors of the vehicle appeared to have indentations
from something like shotgun pellets.   On June 2, 2005, Detective Selvera
arrived at appellant=s apartment and identified himself as a
police officer.  Appellant did not have any identification, and had difficulty 
pronouncing his name.  Detective Selvera asked appellant if he lived at the
apartment, and appellant responded that the apartment was leased to his
girlfriend.  Detective Selvera asked appellant if he would come down to the
police station to discuss the murder at the apartment complex.  Appellant
responded affirmatively but requested that he be allowed to Awash up@ first.  
Detective Selvera then took a photograph of appellant, and drove him to the
police station.  

At the police station, Detective Selvera asked appellant
what, if anything, he knew about the murder.  Appellant responded that he had
no information.  Detective Selvera asked appellant if he could take another
photograph of him and appellant agreed.  Appellant then used Detective Selvera=s cellular
telephone to call his girlfriend, and Detective Selvera took appellant back to
the apartment.  Detective Selvera received identification from appellant=s girlfriend when
they returned to the apartment. 








Detective Selvera placed appellant=s photograph in a
photospread which was shown to both Luis Bonilla and Yvette Lopez.  Both Luis
and Yvette positively identified appellant as the individual who had shot and
killed Samuel.  Appellant was then arrested and charged with murder.  
Appellant pleaded Anot guilty@ to the charged
offense, and asserted a claim of self-defense.  A jury found appellant guilty
of the lesser-included offense of aggravated assault, and assessed punishment
at twenty years= confinement in the Institutional Division
of the Texas Department of Criminal Justice.  

II. Factual Sufficiency of the
Evidence

In his sole issue on appeal, appellant contends the
evidence is factually insufficient to support the jury=s verdict. More
specifically, he contends that, Aunder a balancing
test the jury could not have rejected appellant=s self-defense
claim beyond a reasonable doubt.@ 

When evaluating a challenge to the factual sufficiency of
the evidence, we view all the evidence in a neutral light and inquire whether
we are able to say, with some objective basis in the record, that a conviction
is Aclearly wrong@ or Amanifestly unjust@ because the great
weight and preponderance of the evidence contradicts the jury=s verdict. Watson
v. State, 204 S.W.3d 404, 414B17 (Tex. Crim.
App. 2006).   It is not enough that this court harbor a subjective level of
reasonable doubt to overturn a conviction that is founded on legally sufficient
evidence, and this court cannot declare that a conflict in the evidence justifies
a new trial simply because it disagrees with the jury=s resolution of
that conflict. Id. at 417.   If this court determines the evidence is
factually insufficient, it must explain in exactly what way it perceives the
conflicting evidence greatly to preponderate against conviction.  Id. at
414B17.  Our
evaluation should not intrude upon the fact finder=s role as the sole
judge of the weight and credibility given to any witness=s testimony.  See
Fuentes v. State, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999).  In
conducting a factual‑sufficiency review, we must discuss the evidence
appellant claims is most important in allegedly undermining the jury=s verdict.  Sims
v. State, 99 S.W .3d 600, 603 (Tex. Crim. App. 2003).








At trial, appellant raised self‑defense, and the jury
charge contained self-defense instructions.   See Tex. Penal Code Ann. '' 9.31.   A
criminal defendant bears the burden of production with defenses, requiring him
to raise evidence that would support the defense before he is entitled to it.  Zuliani
v. State, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). However, once the
defense is raised, the State bears the burden of persuasion to disprove the
defense.  Id. The burden of persuasion is not one that requires the
production of evidence; rather, it requires only that the State prove its case
beyond a reasonable doubt.  Id.  The defense is a fact issue to be
determined by the jury, which is free to accept or reject it.  Saxton v.
State, 804 S.W.2d 910, 913B14 (Tex. Crim. App. 1991).  When a jury
finds the defendant guilty, there is an implicit finding against the defensive
theory.  Zuliani, 97 S.W.3d at 594; Saxton, 804 S.W.2d at 914.

Appellant contends the evidence is factually insufficient
to support the jury=s rejection of appellant=s self-defense
claim because the testimony of Luis and Yvette is inconsistent with what they
told the police officers.  Appellant also emphasizes his own testimony, and
that of his girlfriend to show that he felt Ain fear for his
life.@  

 Appellant=s girlfriend, Irene Asian, testified that
on the evening of the murder appellant went to the store to buy some cigarettes
but had forgotten his ATM card.   Appellant called Asian and asked her to meet
him outside the apartment complex with the card.  Asian testified that as she
waited on the sidewalk, she saw appellant pull his vehicle into the apartment
complex and drive toward the gate. At the same time, she saw two males and a
females parked in another vehicle across the street.  Asian then walked to appellant=s car and tapped
on the window.  Appellant noticed her and parked his car.   At the same time,
the other vehicle pulled in behind appellant=s car.  The driver
of that vehicle exited, and the female asked for the gate card.  Appellant then
got out of his vehicle.   








Asian did not hear what was being said between appellant
and the others but believed it to be some sort of argument.   Appellant then
walked to the other side of his vehicle and told Asian to get into the driver=s side.   Asian
testified that she saw one of the males walking toward them with his head
down.  Appellant, who had opened the passenger door, was bending down when one
of the males  grabbed appellant from the back.  Appellant attempted to retrieve
his shotgun from the backseat of his vehicle.  Asian recounted that as the man
and appellant engaged in a struggle, the shotgun went off.  Asian then backed away
and began to drive off as appellant got into the car.   Asian stated that they
drove around the block and returned to their apartment.  Appellant=s testimony in his
own defense was similar to Asian=s version of
events. Appellant, however, also stated that when the man approached him he
appeared to be holding something Ashiny.@[2] 

The Texas Penal Code provides that a person is justified in
using force against another when and to the degree he reasonably believes the
force is immediately necessary to protect himself against the other=s use or attempted
use of unlawful force.  Tex. Penal Code
Ann. ' 9.31(a) (Vernon Supp. 2005).   A person is justified
in using deadly force against another (1) if he would be justified in using
force against the other under section 9.31, (2) if a reasonable person in the
actor=s situation would
not have retreated, and (3) when and to the degree he reasonably believes the
deadly force is immediately necessary either to protect himself against the
other=s use or attempted
use of unlawful deadly force, or to prevent the other=s imminent
commission of aggravated kidnapping, murder, sexual assault, aggravated sexual
assault, robbery, or aggravated robbery.  Id. ' 9.32(a).    ADeadly force@ is defined as Aforce that is
intended or known by the actor to cause, or in the manner of its use or
intended use is capable of causing, death or serious bodily injury.@   Id.  ' 9.01(3).

Appellant contends  his testimony and that of his
girlfriend established self‑defense and further challenges the factual
sufficiency of the evidence the State introduced to rebut this defense. 
However, as noted above, the State=s burden is one of
persuasion, not production of evidence.  See Zuliani, 97 S.W.3d at 594. 
The State is only required to prove its case beyond a reasonable doubt.  Id.  









Appellant, who asserts he was acting in self-defense when
he shot and killed Samuel, is the only witness who testified that Samuel was
allegedly holding a shiny object when he approached him. The other witnesses
denied having any weapons of any kind, and no weapons were found on Samuel=s person, or at
the scene of the offense.   The jury could have found appellant=s  and his
girlfriend=s testimony not credible.  See Watson, 204
S.W.3d at 414B17.  Even if the jury believed appellant=s testimony,
appellant did not provide evidence suggesting that deadly force was necessary
to protect appellant from Samuel.  Appellant never testified that the shiny
object or any other weapon was used against him.  Appellant stated that he and
Samuel struggled for awhile, and he then retrieved his shotgun from the
backseat.  Appellant testified that the first gunshot occurred while they were
struggling over the shotgun.  Even though Samuel did not appear to use this shiny
object to fight back, appellant still felt the need to discharge the shotgun at
least two more times.  Under these circumstances, a rational fact finder could
have found that any danger had been removed at this time, and, therefore,
deadly force was not immediately necessary and thus not justified. See Tex. Penal Code Ann. ' 9.32(a)(3)
(Vernon Supp. 2005).   Moreover, appellant=s flight
immediately after the shooting and his attempts to hide evidence constitute
criminal evidence of his guilt.  See Miller v. State, 177 S.W.3d 177,
184 (Tex. App.CHouston [1st Dist.] 2005, pet. ref=d).  

The jury was entitled to believe all of the State=s evidence and, at
the same time, disbelieve all of the evidence introduced by appellant.  See
Tucker v. State, 15 S.W.3d 229, 235B36 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d).   Giving due deference to the jury=s assessment of
the witnesses= credibility and resolution of evidentiary conflicts,
we conclude, after reviewing the evidence in a neutral light, that the verdict
is not against the great weight and preponderance of the evidence and is not
clearly wrong or unjust.  Therefore, the evidence is factually sufficient to
support appellant=s conviction, and we overrule appellant=s sole issue on
appeal.

 

 








We
affirm the trial court=s judgment. 

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

Judgment
rendered and Memorandum Opinion filed March 20, 2007.

Panel
consists of Justices Frost, Seymore, and Guzman.

Do Not
Publish C Tex. R. App. P. 47.2(b).

 

 









[1]  The trial testimony of appellant and his girlfriend
differs from this version of events.  Their testimony is addressed in detail in
our analysis of appellant=s issues. 





[2]  Neither appellant nor appellant=s girlfriend gave this version (or any other version)
of the events to the police. The first time  either one of the them mentioned
appellant acting in self-defense was during appellant=s trial.