NO. 07-07-0065-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JUNE 12, 2008
_____

ELIZABETH HILL,

                                        Appellant

v.

THE STATE OF TEXAS,

                                        Appellee
_____

FROM THE 403RD DISTRICT COURT OF TRAVIS COUNTY;

NO. D-1-DC-05-300771; HON. BRENDA KENNEDY, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Elizabeth Hill was convicted of murder and sentenced to thirty years in prison. She appeals that conviction in four issues by 1) attacking the legal and factual sufficiency of the evidence, 2) challenging the court's failure to instruct the jury that a negative finding on sudden passion must be unanimous, and 3) attacking the sufficiency of the evidence to prove sudden passion. We affirm.

*Issues 1 and 2 - Legal and Factual Sufficiency*

The standards by which we review legal and factual sufficiency are well established. We refer the parties to *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and *Watson v. State,* 204 S.W.3d 404 (Tex. Crim. App. 2006) for explanation of them.

The evidence at trial was uncontested that Hill shot and killed her husband Joseph Lucas. She contended she did so, however, in self defense and as a result of an abusive relationship. Hill argues that the evidence was sufficient to establish that defense. When a defendant challenges the legal sufficiency of the evidence supporting the factfinder's rejection of self defense in a murder case, we do not look to whether the State presented evidence that refuted the theory of self defense but instead determine whether any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt and would have also found against the defendant on the issue of self defense beyond a reasonable doubt. *Miller v. State,* 177 S.W.3d 177, 183 (Tex. App.–Houston [1st Dist. 2005, pet. ref'd). Furthermore, at the time of trial, a person could use deadly force in her own defense to the degree she reasonably believed the force was immediately necessary to protect herself against the other's use or attempted use of unlawful force and if a reasonable person in the actor's situation would not have retreated. TEX. PEN. CODE ANN. §9.32(a) (Vernon 2003).

The record shows that 1) appellant was perceived by persons who knew the couple to have the stronger personality, 2) appellant was very angry over Joseph having

disciplined their son in an inappropriate manner[1] and requested that he move out, 3) she gave opposite stories to persons about whether the marriage was over or could be saved after a joint counseling session, 4) during that counseling session, the counselor did not perceive appellant to feel personally threatened by Joseph but found her to be concerned that Joseph not take any of her personal belongings, 5) appellant called Joseph abusive names during the counseling session but Joseph did not reciprocate and took responsibility for his inappropriate behavior with his son, 6) although appellant testified she was afraid of Joseph and asked a neighbor to be at the house when Joseph came to collect his personal belongings, the neighbor never heard any arguments or raised voices while appellant and Joseph were downstairs discussing finances and perceived the couple to be friendly, 7) although appellant testified she was afraid of Joseph, she agreed to accompany him alone upstairs to collect his belongings without asking the neighbor to accompany them, 8) about 20 or 30 seconds after appellant and Joseph went upstairs, appellant began screaming that Joseph should let go of her but the neighbor never heard sounds of a struggle or Joseph say anything, 9) appellant continued to scream for several minutes, but the neighbor never heard any sounds from Joseph until he heard an "ugh," 10) four shots were fired into Joseph with two of them having a trajectory sharply downward, 11) forensic evidence showed the first two shots were probably in the face and the hand which then penetrated into Joseph's chest causing him to fall and the last two shots were fired into his shoulder and head, 12) any of the four shots could ultimately have been fatal, 13) there

---

[1] The six-year-old child had body slammed the two-year-old child to the ground. Joseph then did the same to the six-year-old to show him how it felt. A police officer investigated and found two bruises on the child. He was also seen by a doctor and found to have no serious injury. Appellant denied to the responding police officer that she was in an assaultive relationship with Joseph.

were no obvious signs of a struggle in the couple's bedroom or closet where Joseph was found, 14) the blood spatter was found no higher than four feet above the ground and blood spatter was consistent with Joseph being no higher than one and one-half to two feet from the floor when he was shot in the head, 15) no blood was found outside of the closet, 16) appellant never saw a weapon on Joseph that night and appellant had never known him to carry or own a weapon, 17) appellant had been a Travis County jailer and had firearm training, 18) appellant had no visible blood, red marks, bruises, or scratches on her after the murder, 19) a fellow prisoner stated that appellant told her she had antagonized Joseph into attacking her and then shot him, 20) the detective questioning appellant believed that her tears were forced since she tended to look at him for his reaction, 21) appellant expressed no remorse to investigating officers over the death of her husband, 22) appellant informed her cell mate that she was "trying to save her house through the insurance on the husband," and 23) appellant had previously disclosed to an officer that she was *not* in an abusive relationship with her husband. The foregoing is some evidence upon which a rational jury could conclude, beyond reasonable doubt, that appellant murdered her husband and did not act in self-defense.

Admittedly, there had been an incident that appellant reported to police in 1997 when Joseph had allegedly pushed appellant into the bed causing her to fall to the floor and bruise herself. There was also expert testimony that appellant fell within the pattern of an abused wife in spite of her outwardly stronger personality. Appellant herself explained that she was so afraid of Joseph after she asked him to move out that she slept with a gun under her pillow. During the incident, she averred that Joseph had pulled her into the closet and locked her in a bear hug with his hand over her mouth while screaming

4

and threatening to kill her and their sons. She further stated that she kneed him in the groin and, after he grabbed her leg, she reached for her gun in a shoe case (which she had just placed in that location that morning) and shot Joseph twice. Two more shots were fired inadvertently, according to her, after she fell in the outer closet and Joseph lunged at her. Yet, this testimony and other of its ilk simply raised issues of credibility. And, selecting the witness and testimony to believe falls within the bailiwick of the jury. For instance, it was up to that body to decide whether appellant spoke truthfully when she alleged that the decedent grabbed and screamed at her; again, the neighbor testified that he heard no noises coming from Joseph except a final grunt.

So, based on the entire record before us, we cannot say that the jury's verdict is supported by weak evidence or so against the great weight of the evidence as to undermine our confidence in the outcome. Simply put, the evidence is both legally and factually sufficient to uphold the verdict, and issues one and two are overruled.

*Issue 3 - Charge Error*

Appellant next complains of the trial court's failure to make clear to the jury in the charge on punishment that a finding either for or against sudden passion must be unanimous per *Sanchez v. State,* 23 S.W.3d 30, 34 (Tex. Crim. App. 2000). We overrule the issue.

Here, the trial court instructed the jury, via separate paragraphs, about its need to decide whether or not appellant acted under sudden passion. So too did it inform the jury of the range of punishment applicable in either situation. It subsequently closed its instructions by telling the jurors that "[y]our verdict must *each* be unanimous." (Emphasis added). After deliberating, the jury returned one form addressing the matter of sudden

5

passion and another setting punishment. Under these circumstances, we conclude that the trial court fulfilled its obligation in question through informing the jury that each verdict must be unanimous. *See Cartier v. State,* 58 S.W.3d 756, 760 (Tex. App.–Amarillo 2001, pet. ref'd) (finding the general instruction that the verdict must be unanimous sufficient to instruct the jury that its finding on sudden passion must be unanimous).

*Issue 4 - Evidence to Support Sudden Passion*

Finally, appellant argues that the jury finding against sudden passion was in error. It is not clear whether appellant is challenging the legal or factual sufficiency of the evidence or both of them. However, appellant does not prevail under either one, and we overrule the issue.

Sudden passion is passion directly caused by and arising out of provocation by the individual killed which passion arises at the time of the offense and is not solely the result of former provocation. TEX. PEN. CODE ANN. §19.02(a)(2) (Vernon 2003). Next, adequate cause is cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection. *Id.* §19.02(a)(1).

Evidence appears of record that, if believed, could support a finding of sudden passion. Yet, the very same evidence depicting that appellant did not act in self-defense also constitutes some evidence that she acted from cool reflection or otherwise planned the murder. Again, there were no signs of a struggle in the bedroom or closet or on appellant. Moreover, the only surviving witness at the scene, other than appellant, heard no screams or threats purportedly uttered by Joseph, only those of appellant. This and other matter of record tended to contradict appellant's version of events.

6

As already stated, the jury was free to disbelieve appellant's story. Even if Joseph had been abusive to appellant in the past, it had before it some evidence upon which it could decide, beyond reasonable doubt, that appellant's actions did not result directly from or arise out of provocation at the time of the offense. And, we cannot say that the evidence supporting such a decision was weak or overwhelmed by contrary evidence.

Having overruled all of appellant's issues, we affirm the judgment of the trial court.

Per Curiam

Do not publish.