Opinion issued April 12, 2012.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-11-00090-CR

———————————

Vernell Harvey, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 208th District Court

Harris County, Texas



Trial Court Case No. 1285555

 



 

MEMORANDUM OPINION

A jury
convicted Vernell Harvey of murder and assessed his
punishment at sixty-two years’ confinement.  See Tex. Penal Code Ann. § 19.02(b) (West 2003). On
appeal, Harvey contends the evidence is legally and factually insufficient to
support his conviction.  We affirm.

Background

One Friday night in August 2009,
Shirley Lusk and her adult daughter, Chaka Toles, went
to dinner and a movie.  Afterward, Toles accompanied Lusk on the city bus to her home in Houston’s
Fifth Ward.  They heard yelling and
cursing as they got off the bus and saw what they initially thought was a man
with a belt chasing his son, but, as the mother and daughter got closer, they
realized that they were seeing a larger man holding a machete and chasing a
smaller man.  The larger man wore a white
shirt, dark pants, and stained white tennis shoes, and the smaller man wore a dark
shirt and pants.  

The larger man shouted, “I’m going
to catch you, . . . I’m going to get you,” as the
smaller man fled from him.  Eventually,
the smaller man, later identified as Lewis White, tripped on some rocks and
fell face-down on the ground.  The larger
man caught up to where White had fallen and began swinging the machete,
striking the back of White’s head and neck five or six times.  Lusk screamed at the man to stop.  As the man turned and walked away from them,
still holding the machete.  Toles ran up to White and knelt beside him.  She saw that the machete had blood running
from it.  While Lusk ran to call for an
ambulance, Toles remained with White and urged him to
hold on, but he died almost immediately.

When Houston Police Department
(HPD) Officer D. Riggs arrived at the scene, emergency medical personnel were
attending to White’s body.  He spoke
briefly with Lusk and Toles and had them wait in the
patrol car for further questioning.  By
then, a crowd of neighbors and others had gathered.  Some confirmed that they had seen someone
running after someone else and identified a potential suspect—Harvey—who was White’s
next-door neighbor in a small residential area a short distance from the street
where the incident had taken place.  

Police found Harvey inside his
home.  After Harvey consented to a search
of the premises, the officers searched Harvey’s home and yard.  It was very dark and hard to see, even with
flashlights.  Detective A. Semmelrock, a sergeant in HPD’s Homicide Division, looked
specifically for dark-colored clothing consistent with the witness’s
description of the assailant’s pants.  He
seized a pair of black jean shorts with what appeared to be a bloodstain.  Due to the lack of visibility, the officers decided
to resume their search during daylight hours.  A day and a half later, after they had
interviewed Lusk and Toles and secured a search
warrant, the officers returned to complete the search.  Among other debris in the backyard was an old
stove with a rolled-up carpet on top. 
The officers observed a handle sticking out of the carpet and unrolled
it to find a machete, a broken cell phone, and travel-size liquid soap and
shampoo bottles.  A kitchen knife that
had been underneath the carpet lay on the stove.  No DNA was found on the knife or
machete.  DNA testing of the inner
waistband of the black shorts identified contact DNA from Harvey inside the
waistband, while the bloodstain contained White’s DNA. 

An autopsy showed that White had
sustained a total of eight “chop” wounds—caused by a combination of sharp and blunt force—to the
head, neck, and left arm.  The blow to
White’s hand cut through the knuckles of most of his fingers, nearly severing
them.  One chop wound penetrated the
scalp and skull, and another severed White’s spinal cord, an injury that causes
simultaneous death.  These wounds were
inflicted with a heavy, beveled-edge weapon like a machete.  White’s body also had a laceration on the
chest, an injury that likely resulted from a smaller, sharper implement, such
as a kitchen knife.  Expert testimony
introduced at trial showed that the machete found in Harvey’s backyard was
capable of inflicting the chop wounds found on White’s body, and neither the
machete nor the kitchen knife could be excluded as having caused White’s
corresponding injuries.  

Discussion

Standard of Review

We review legal and factual
sufficiency challenges using the same standard of review.  Ervin v.
State, 331 S.W.3d 49, 54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref’d) (construing majority holding of Brooks v. State, 323 S.W.3d 893, 912, 926 (Tex. Crim. App. 2010)).  Under this standard, the evidence is
insufficient to support a conviction if, considering it in a light favorable to
the verdict, no rational factfinder could have found the essential elements of
the charged offense beyond a reasonable doubt.  See
Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); In re Winship,
397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); Laster v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); Williams v. State, 235 S.W.3d 742, 750
(Tex. Crim. App. 2007).  We presume that
the factfinder resolved any conflicting inferences in favor of the verdict and
defer to that resolution.  See Jackson, 443 U.S. at 326, 99 S. Ct.
at 2793; Clayton v. State, 235 S.W.3d
772, 778 (Tex. Crim. App. 2007).  We
defer to the factfinder’s evaluation of the credibility and weight of the
evidence.  See Williams, 235 S.W.3d at 750.

Murder

Under the Texas Penal Code, a
person commits the offense of murder if the person “intentionally or knowingly
causes the death of an individual” or “intends to cause serious bodily injury
and commits an act clearly dangerous to human life that causes the death of an
individual.”  Tex. Penal Code Ann. § 19.02(b) (West 2003).  Harvey’s appeal primarily challenges the
jury’s finding that he committed the murder. 
“[T]he State may prove the defendant’s identity and criminal culpability
by either direct or circumstantial evidence, coupled with all reasonable
inferences from that evidence.”  Gardner v. State, 306
S.W.3d 274, 285 (Tex. Crim. App. 2009).

Sufficiency Analysis

          Harvey
contends that the State’s evidence linking Harvey with White’s murder—namely, Lusk’s eyewitness testimony and the DNA
found on Harvey’s black shorts—is insufficient to support the jury’s finding of
guilt.  In claiming that Lusk’s trial
testimony identifying Harvey as the killer cannot support the verdict, Harvey
points to the fact that Lusk’s identification of Harvey as the killer from the
investigator’s photo array was only “tentative,” showing that she was unable to
positively identify Harvey just days after the crime.  The record, however, does not require the
conclusion that Lusk was unable to identify Harvey as the killer, only that she
was initially unwilling to cooperate with the investigation.  Lusk testified that she did not cooperate at
the beginning of the investigation because it was dangerous to be a “snitch”
and she did not want to get involved, but later had a change of heart.  

The jury alone decides whether to
believe eyewitness testimony, and the jury alone resolves any conflicts or
inconsistencies in the evidence.  Mosley v. State, 983
S.W.2d 249, 254 (Tex. Crim. App. 1998); Orsag v. State,
312 S.W.3d 105, 115 (Tex. App.—Houston 2010, pet. ref’d).  A rational jury could reasonably accept
Lusk’s explanation of the discrepancies between her initial statement to the
police and her trial testimony and resolve them accordingly.  

          Harvey
also contends that the fact that White’s DNA was found on his shorts does not support
the jury’s finding that he murdered White. 
First, he claims that the shorts did not meet either eyewitness’s
description of the murderer’s clothing that day.  We disagree. 
Lusk explained that she did not recall whether the pants Harvey wore
were long or short, but, consistent with the shorts recovered in Harvey’s home,
she did describe them as dark in color. 
The eyewitnesses also testified to other circumstances, such as the
speed and the horrific nature of the events unfolding that night, and some of
the events’ taking place in darker areas further from the streetlight.  The jury was entitled to take these
circumstances into consideration in determining the credibility and weight of
the eyewitness’s testimony.  

          Harvey
also asserts that White’s DNA “could have been from spit or sweat as easily as
blood,” and, given the proximity of their homes, could have gotten onto his
shorts by other means.  Contrary to this
assertion, the record shows that the HPD crime lab criminalist who conducted
serology testing found that the some of the stains on the shorts yielded a
positive presumptive result for the presence of human blood.  Later DNA testing identified White as a major
contributor to the DNA found in those stains, and Harvey could not be excluded
as a minor contributor.  The DNA expert
explained that the shorts were 

screened and found positive for the
presence of blood.  So I would expect
this DNA came from blood.  But it’s also
possible that maybe one of the donors spit in that area. . . .  It’s possible.  We know blood was there; so, I would expect
this to be blood DNA.  But DNA testing
can’t tell you what type of cell it came from. 


Based on this testimony, viewed in a light favorable
to the verdict along with the other evidence in the record, a rational jury
could reasonably find that Harvey’s shorts became stained with White’s blood
while Harvey committed mayhem and, ultimately, White’s murder.

          Harvey
also complains that neither Toles’s testimony nor the
presence of the machete and knife at Harvey’s home links him to White’s murder.
 These complaints lack merit.  We note that the verdict could stand on
Lusk’s testimony alone; the testimony of a single eyewitness is sufficient to
support a felony conviction.  Davis v. State, 177
S.W.3d 355, 359 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (en banc).  Even so, Toles’s testimony lends further support to the jury’s
finding.  While Toles
could not identify Harvey in a photo array, she testified that she saw the
murderer holding a machete with blood dripping from it immediately after the
murderer stepped away from White’s body. 
Her testimony is consistent with the medical examiner’s testimony
concerning the probable murder weapon, and the police found a machete rolled
inside a carpet in Harvey’s backyard. 
The jury could reasonably infer that these circumstances showed Harvey’s
attempt to hide the machete and thus his guilt of the murder.  See
Miller v. State, 177 S.W.3d 177, 184 (Tex. App.—Houston [1st Dist.] 2005,
pet. ref’d) (referring to proof that defendant burned
clothes he wore on day of murder and directed friend to bury defendant’s gun in
backyard in concluding that defendant’s “attempts to hide evidence constitute
circumstantial evidence of his guilt”).  The
absence of DNA on the machete does not undermine that inference.  The officers also found small bottles of soap
and shampoo rolled into the carpet along with the machete, and the HPD
criminalist explained that soap and water would easily remove DNA from a
nonporous surface, such as a knife blade. 
Considering all the evidence in the light most favorable to the verdict,
and giving deference to the jury’s determination of credibility and resolution
of conflicts in the evidence, we hold a rational jury could find beyond a
reasonable doubt that Harvey murdered White.  See
Brooks, 323 S.W.3d at 899.

Conclusion

          We
hold that the evidence supports the conviction. We therefore affirm the
judgment of the trial court.

 

 

                                                                      Jane
Bland

                                                                      Justice


 

Panel
consists of Justices Keyes, Bland, and Sharp.

Do
not publish.   Tex. R.
App. P. 47.2(b).