PD-0403-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/27/2015 9:56:08 AM
Accepted 5/28/2015 2:56:31 PM
ABEL ACOSTA
CLERK

**PD-0403-15**

## In The Court of Criminal Appeals
## of the State of Texas

**Jairo Umanzor**
*Appellant*

v.

**The State of Texas**
*Appellee*

On Petition for Discretionary Review from the Fourteenth Court of Appeals
Cause No. 14-13-00958-CR affirming the conviction in
Cause Number 1349385 from the 228th District Court of Harris County, Texas

### Petition for Discretionary Review

FILED IN
COURT OF CRIMINAL APPEALS

May 28, 2015

ABEL ACOSTA, CLERK

**Alexander Bunin**
Chief Public Defender
Harris County, Texas

**Daucie Schindler**
Assistant Public Defender
Harris County, Texas
TBN 24013495
1201 Franklin, 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 368-9278
Daucie.schindler@pdo.hctx.net

**Counsel for Petitioner**

## IDENTITY OF PARTIES AND COUNSEL

Appellant

Mr. Jairo Umanzor
TDCJ No. 01891389
Joe F. Gurney Transfer Facility
1385 FM 3328
Palestine, Texas 75803

Defense Counsel at Trial

Ms. Elida Aguilar
SBOT No. 09575850
440 Benmar, Suite 3050
Houston, Texas 77060

Prosecutor at Trial

Alexis Mitchell
*Assistant District Attorney*
*Harris County*
SBOT No. 24063696
1201 Franklin Street, 6th Floor
Houston, Texas 77002

Presiding Judge

The Honorable Jay Burnett
*Visiting Judge*
228th district court
1201 Franklin Street, 16th Floor
Houston, Texas 77002

Appellant's Counsel

Daucie Schindler
*Assistant Public Defender*
Harris County
1201 Franklin Street, 13th Floor
Houston, Texas 77002

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................................ 2

TABLE OF CONTENTS ................................................................................................ 3

INDEX OF AUTHORITIES............................................................................................ 5

STATEMENT REGARDING ORAL ARGUMENT ............................................................ 6

STATEMENT OF THE CASE........................................................................................ 6

STATEMENT OF PROCEDURAL HISTORY.................................................................... 6

GROUNDS FOR REVIEW ............................................................................................ 7

GROUND ONE: THE COURT OF APPEALS MUST CONSIDER ALL
EVIDENCE IN ITS SUFFICIENCY REVIEWS. THE COURT OF APPEALS
ERRED IN ITS SUFFICIENCY ANALYSIS AS TO SELF-DEFENSE WHEN IT
FAILED TO REVIEW EVIDENCE SUPPORTING THE DEFENSE, BUT
FOCUSED SOLELY ON EVIDENCE CONTRADICTING THE CLAIM.

GROUND TWO: THE COURT OF APPEALS ERRED IN AFFIRMING THE TRIAL
COURT'S DENIAL OF MR. UMANZOR'S REQUESTED LESSER INCLUDED JURY
INSTRUCTIONS, SPECIFICALLY INVOLUNTARY MANSLAUGHTER.

REASONS FOR REVIEW.............................................................................................. 7

STATEMENT OF FACTS .............................................................................................. 7

GROUND ONE: THE COURT OF APPEALS must consider all evidence in its
sufficiency reviews. The Court of Appeals erred in its sufficiency analysis as to
self-defense when it failed to review evidence supporting the defense, but
focused solely on evidence contradicting the claim ............................................ 11

ARGUMENT .............................................................................................................. 11

GROUND Two: THE COURT OF APPEALS erred in affirming the trial court's
denial of Mr. Umanzor's requested lesser included jury instructions,
specifically involuntary manslaughter. .................................................................. 16

ARGUMENT .................................................................................................... 16

PRAYER .......................................................................................................... 19

CERTIFICATE OF COMPLIANCE ...................................................................... 20

CERTIFICATE OF SERVICE ............................................................................... 21

APPENDIX ....................................................................................................... 22

# INDEX OF AUTHORITIES

## Cases

*Cavazos v. State*, 382 S.W.3d 377 (Tex. Crim. App. 2012)..............................................................17

*Chambless v. State*, 8 Texas Court Reporter 628 (Criminal Appeals, Tyler term, 1903)...... 13, 14

*Cleveland v. State*, 177 S.W.3d 374 (Tex. App. -Houston [1st Dist.] 2005, pet. ref'd).................12

*Jackson v. State*, 992 S.W.2d 469 (Tex. Crim. App. 1999)..............................................................16

*Licon v. State*, 99 S.W.3d 918 (Tex. App. -El Paso 2003, no pet.)....................................................16

*Medina v. State*, 411 S.W.3d 15 (Tex. App. -Houston [14th Dist.] 2013, no pet.).......................12

*Navarro v. State*, 863 S.W.2d 191 (Tex. App. -Austin 1993, pet. ref'd)........................................16

*Pittman v. State*, 140 Tex. Crim. 264, 144 S.W.2d 569 (Tex. Crim. App. 1940) .........................14

*Salinas v. State*, 644 S.W.2d 744 (Tex. Crim. App. 1983) .............................................................16

*Saxton v. State*, 804 S.W.2d 910 (Tex. Crim. App. 1991)......................................................... 12, 13

*Sells v. State*, 121 S.W.3d 784 (Tex. Crim. App. 2003)..................................................................12

*Skinner v. State*, 956 S.W.2d 532 (Tex. Crim. App. 1997) .............................................................17

*Sweed v. State*, 351 S.W.3d 63 (Tex. Crim. App. 2011)..................................................................17

*Umanzor v. State*, No. 14-13-00958-CR, 2015 WL 1456576 (Tex. App. –Houston [14th Dist.] March 26, 2015).........................................................................................................11, 12, 13

TO THE COURT OF CRIMINAL APPEALS OF TEXAS:

Jairo Umanzor, the defendant/appellant below, petitions for review of the Fourteenth Court of Appeals' judgment affirming his conviction.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would aid in the resolution of the case.

## STATEMENT OF THE CASE

This is a petition for review of a direct appeal brought after a conviction for the felony offense of murder. (C.R. at 13). On October 21, 2013, Mr. Umanzor entered a plea of not guilty and proceeded to trial by jury. On October 24, 2013, the jury found Mr. Umanzor guilty of murder as charged. (C.R. at 110). After the punishment portion of the trial, the jury sentenced him to fifteen (15) years imprisonment in the Institutional Division of Texas Department of Criminal Justice. (C.R. at 121). Mr. Umanzor filed timely notice of appeal (C.R. at 125). Undersigned counsel, Daucie Schindler, of The Harris County Public Defender's Office was appointed to represent Mr. Umanzor on October 25, 2013. (C.R. at 127).

## STATEMENT OF PROCEDURAL HISTORY

On March 26, 2015, in an unpublished opinion in Cause No. 14-13-00958-CR, the Fourteenth Court of Appeals affirmed Mr. Umanzor's conviction. Mr. Umanzor did not move for rehearing. Mr. Umanzor was granted one extension of time to file this Petition for Discretionary Review.

## GROUNDS FOR REVIEW

**GROUND ONE: THE COURT OF APPEALS MUST CONSIDER ALL EVIDENCE IN ITS SUFFICIENCY REVIEWS. THE COURT OF APPEALS ERRED IN ITS SUFFICIENCY ANALYSIS AS TO SELF-DEFENSE WHEN IT FAILED TO REVIEW ANY EVIDENCE SUPPORTING THE DEFENSE, BUT FOCUSED SOLELY ON EVIDENCE CONTRADICTING THE CLAIM.**

**GROUND TWO: THE COURT OF APPEALS ERRED IN AFFIRMING THE TRIAL COURT'S DENIAL OF MR. UMANZOR'S REQUESTED LESSER INCLUDED JURY INSTRUCTIONS, SPECIFICALLY INVOLUNTARY MANSLAUGHTER.**

## REASON FOR REVIEW

The Fourteenth Court of Appeals has decided an important question of state or federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals or the Supreme Court of the United States. Tex. R. App. P. 66.3(c).

## STATEMENT OF FACTS

In his statement to police, admitted as State's Exhibit 69, Mr. Umanzor told police that on May 29, 2012, in the evening hours, he had just finished taking a shower and was about to watch a basketball game when a man named Derick, along with Derick's father and an unknown female, came to his house looking for someone who sold drugs. At the time, Mr. Umanzor was living in his father's house with his wife. He had been living there for about five years. Before living at his father's house, Mr. Umanzor lived with his mother. It was there that he met Derick who lived nearby. Mr. Umanzor sent them across the street to find a man called "Boogie" and another neighbor, later identified as Reginald Sheppard, who sold drugs.

7

Mr. Umanzor went outside to smoke and he watched as the three individuals went across the street to Mr. Shepherd's house. Soon after, he saw them get into a fight with Mr. Sheppard. The three individuals left in a car, but Mr. Umanzor saw Mr. Sheppard go to Boogie's house and heard him say "get the gun." Mr. Umanzor knew they were going to blame him for the altercation. He told his wife to hide with the children and he got his gun, a Colt .45. He did not think he had time to call police.

Boogie and Mr. Sheppard came to Mr. Umanzor's door with guns in their hands. Although his wife advised him not to open the door, Mr. Umanzor opened the door, in hopes of being better able to protect himself and his family. However, when he opened the door, Boogie cocked a gun and pointed it at him. Mr. Umanzor hit the gun that Boogie had in his hand and ran passed them to his front yard. He was hiding next to his car when he heard shots fired. Although he was unable to see where he was shooting, Mr. Umanzor discharged his weapon. In his statement, Mr. Umanzor repeatedly told police that he was scared for his life and he was scared for the lives of his family. He believed that he was defending his family when he discharged his weapon. When the shooting stopped, Mr. Umanzor went inside and told his wife to leave. His wife took the gun and disposed of it. Boogies' dad came to his door and Mr. Umanzor explained what had happened and went across the street to help Mr. Sheppard who had been shot.

Shirlie Ward was doing the dishes in her home around 9:30 p.m., May 29, 2012, when she heard three gunshots. She looked out her window and saw a man she

8

recognized as Reginald Sheppard running across her yard. Mr. Sheppard stumbled and fell so she opened her door. She heard someone say something like "dog, don't go out on me," but she did not see who said it. She stood outside as a crowd began to gather and an ambulance arrived. (3 R.R. at 103-108).

Reginald Sheppard, Sr., was getting ready to take out the trash when he heard gunshots. He ran around to the front of his house and one of his son's friends told him that his son, Reggie, had been hit. He saw his son run to his neighbor's driveway so he went to him. He was unable to tell if his son was injured, but he helped him sit down. He told his wife to call 911. Mr. Umanzor was at the scene and he helped lift his son's legs in an attempt to save his life. Mr. Umanzor repeatedly said, "don't die" and "hold on man." (3 R.R. at 111 – 115).

Javier Garcia was watching television when he heard a gunshot. He looked outside and saw someone running. He also saw Mr. Umanzor standing in his driveway next to his car. Mr. Umanzor appeared to be firing a gun, but Mr. Garcia did not see the gun. Mr. Garcia heard two or three more shots and went inside with his children. About thirty minutes later, he came back outside and noticed a crowd of people. He eventually told a police officer what he had seen. (3 R.R. at 118-123).

Justin Crawley with the Houston Fire Department was working a 24-hour shift on May 29, 2012, when he was called to the scene of a possible shooting. When he arrived at the scene he noticed a large crowd of people and a man lying on the ground. Unable to find a pulse on the man, he transferred him to the ambulance.

The man, later identified as Mr. Reginald Sheppard, was pronounced dead at the scene. (3 R.R. at 25-27).

Officer Thomas Gately, a patrol officer with the Houston Police Department, arrived at the scene and pulled up behind the ambulance. The first witness that he spoke with, Mr. Garcia, pointed out the man who he believed was the shooter. Officer Gately identified Mr. Umanzor in the courtroom as the man who was identified by Mr. Garcia at the scene as the possible shooter. (3 R.R. at 30-36). Officer Gately approached Mr. Umanzor about the shooting and Mr. Umanzor told him that he had seen three black males leave the scene in a blue Ford vehicle. Another witness at the scene saw two white males and a white female leave the scene in a burgundy vehicle. (3 R.R. at 38).

Sergeant Richard Rodriguez with the homicide division of the Houston Police Department was called to the scene of a murder on the night of May 29, 2012. When he and his partner arrived at the scene there was an ambulance there. Sergeant Rodriguez spoke with a patrol officer and some witnesses. He spoke briefly with Mr. Umanzor and with a woman he believed to be Mr. Umanzor's wife. Mr. Umanzor's wife gave them consent to search the house after a witness indicated that Mr. Umanzor was the shooter. In the house they found ammunition in Mr. Umanzor's bedroom and just outside the front door they found a live .45 caliber round. Sergeant Rodriguez called for a k9 unit to come to the house to help locate a firearm, but no

firearm was found in the house. Mr. Umanzor was transported by a patrol officer downtown where he gave a statement. (3 R.R. at 130-134).

Officer John Butler, with the Houston Police Department Crime Scene Unit, collected evidence from the scene including five fired .45 caliber cartridge casings, a fired Winchester .40 caliber casing, two unfired .45 caliber casings, an unfired projectile, a copper jacketed bullet, a bullet fragment, and blood. There were bullet strikes on a car parked in Mr. Umanzor's driveway and on a car parked along the street. (3 R.R. at 66-76).

Kim Downs, a firearms examiner with the Houston Police Department, analyzed six fired .45 automatic cartridge cases and one fired .40 S & W cartridge case. She concluded from the evidence that "there was at least one firearm that was a .45 automatic and a possible .40 S & W was present." (4 R.R. at 74).

**GROUND ONE: THE COURT OF APPEALS MUST CONSIDER ALL EVIDENCE IN ITS SUFFICIENCY REVIEWS. THE COURT OF APPEALS ERRED IN ITS SUFFICIENCY ANALYSIS AS TO SELF-DEFENSE WHEN IT FAILED TO REVIEW ANY EVIDENCE SUPPORTING THE DEFENSE, BUT FOCUSED SOLELY ON EVIDENCE CONTRADICTING THE CLAIM.**

**ARGUMENT**

The Court of Appeals reviewed the sufficiency of the evidence to support the jury's rejection of Mr. Umanzor's self-defense by determining whether any rational trier of fact "would have found against appellant on the self-defense issue beyond a reasonable doubt." *Umanzor v. State*, No. 14-13-00958-CR, 2015 WL 1456576

11

(Tex. App. –Houston [14th Dist.] March 26, 2015). However, the entirety of the analysis was spent refuting the defense claim without an objective evaluation of the evidence that supported self-defense.

The evaluation of the evidence was as follows:

Because self defense is an issue of fact to be determined by the jury, the jury is free to accept or reject the defensive issue. *Medina v. State*, 411 S.W.3d 15, 21 (Tex. App. –Houston [14th Dist.] 2013, no pet.)(citing Saxton, 804 S.W.2d at 913-14). A jury's guilty verdict is an implicit rejection of the appellant's self-defense claim. *Saxton*, 804 S.W.2d at 914.

. . .

...although the State bears the burden of persuasion to disprove the issue of self-defense, the State is not required to affirmatively present evidence that specifically refutes the defendant's self-defense evidence. *Saxton*, 804 S.W.2d at 913-14. Here, the only evidence that appellant acted in self defense comes from his statement to police. And, although he claimed, at first, that Reggie and Boogie confronted him at his front door and shortly thereafter began shooting at him, appellant later backed away from this claim and stated he was not sure if they had fired at him. Further, there is no evidence of any gunshots fired toward appellant's house; the only evidence of gunshots indicates the shots were fired away from appellant's house. And, the only bullets and casings found at the scene matched the type of unfired bullets found in appellant's house. A defendant's own statement regarding his intent is not enough to render the evidence, without more, insufficient. *See Sells v. State*, 121 S.W.3d 748, 754 (Tex. Crim. App. 2003)(holding that only evidence weighing against jury finding that defendant entered home with no specific intent to commit sexual assault was defendant's own statement, which was not enough to render the evidence insufficient). Appellant also admitted to leaving his home and chasing after Reggie and Boogie as they "scattered." *Cf. Cleveland v. State*, 177 S.W.3d 374, 387 (Tex. App. –Houston [1st Dist.] 2005, pet. ref'd)(holding that the jury could have rationally concluded the defendant's claim of self defense was defeated when he continued to stab the complainant in the back as she lay bleeding on the floor).

As noted above, appellant instructed his wife to dispose of the gun he used to shoot at Reggie and Boogie as they fled, and he lied to police when they arrived at the scene, misdirecting them to other alleged perpetrators. This evidence

12

indicates a consciousness of guilt. *See King*, 29 S.W.3d at 565. And even though appellant tried to help resuscitate Reggie shortly after the incident and was overheard pleading for Reggie not to die, this evidence could be viewed to bolster an inference of appellant's awareness that he had intentionally committed an act clearly dangerous to human life and was hoping that his actions would not result in Reggie's death.

In short, viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational jury could have rejected appellant's claim of self defense and found him guilty of murder beyond a reasonable doubt. Accordingly, we overrule the entirety of appellant's first issue.

*Umanzor*, 2015 WL 1456576 at *3-4.

The State's case rested entirely on discrediting Mr. Umanzor's version of events, yet it was incapable of doing so. In resolving the sufficiency of the evidence issue, this Court has explained "the State has the burden of persuasion in disproving the evidence of self-defense...That is not a burden of production, i.e., one which requires the State to affirmatively produce evidence refuting the self-defense claim, but rather a burden requiring the State to prove its case beyond a reasonable doubt." *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991).

Texas law has long held the right to self-defense sacrosanct. As early as 1903, our courts of appeals were affirming every citizen's inalienable right to protect bodily integrity. In a case from 1903, the appellate court heard a case where an appellant and the decedent had antecedent ill will. *Chambless v. State*, 8 Texas Court Reporter 628 (Criminal Appeals, Tyler Term, 1903). In *Chambless*, the appellant left his house in the afternoon and headed in the direction of the deceased, and late that evening the deceased was found dead. *Id.* The condition of the ground near where the deceased

was found indicated some kind of scuffle. *Id.* The appellant testified that he and the deceased argued, the deceased began striking the appellant, and appellant cut decedent with a knife. *Id.* Appellant went home that day not knowing whether he had killed the deceased. *Id.* The court found:

> We do not think the above detailed testimony, which is practically the facts in this record, show murder in the second degree, or any grade of felonious homicide. We do not understand the decisions to hold that the bare fact that parties are not friendly, and a subsequent killing occurs, this per se would authorize a conviction for any grade of felonious homicide...We do not understand the law to be that the jury can arbitrarily find a verdict, regardless of the undisputed evidence, and presume as it were against defendant in favor of murder...

*Id.* at 628-29.

"It is true the jury convicted the appellant, and their verdict is always respected and upheld by this court when there is evidence upon which it might have been based; but when the verdict is against the uncontroverted testimony, it is our solemn duty to set it aside" *Pittman v. State*, 140 Tex. Crim. 264, 265, 144 S.W.2d 569 (Tex. Crim. App. 1940). Although the Court respected the verdict of the jury, it respected justice more:

> It is true that the jury convicted the appellant, and their verdict is always respected and upheld by this court when there is evidence upon which it might have been based; but when the verdict is against the uncontroverted testimony, it is our solemn duty to set it aside. The conduct of the injured party at the time was of such character as was reasonably calculated to create in the mind of appellant an apprehension or fear of death or serious bodily injury...This being true, what were appellant's legal rights under the circumstances? To take such action as would protect him from imminent danger which confronted him at the time.

*Pittman*, 140 Tex. Crim. 264, 265-66 (1940).

14

Here, the evidence established that on May 27, 2012, Mr. Sheppard was shot and the injury he sustained from this gunshot wound caused his death. Mr. Umanzor did not deny discharging the weapon that shot Mr. Sheppard. The State offered the testimony of Mr. Garcia who identified Mr. Umanzor as the individual he thought he saw shoot at Mr. Shepherd, but he did not see any gun. However, Mr. Umanzor did not challenge the evidence that he was the shooter. Mr. Garcia's testimony failed to offer any evidence of Mr. Umanzor's mental state.

It is within the province of the jury to disbelieve the defensive testimony offered, however, State's Exhibit No. 69, the statement given by Mr. Umanzor to the police after the shooting, was the only evidence offered by the State that would assist the fact finder in determining Mr. Umanzor's mental state. *See id.* In his statement to police, Mr. Umanzor indicated that he was in fear of his life and the lives of his family members. He fired his weapon in front of his home in order to protect himself and his family. There was no conflicting evidence offered by the state to free the jury from having to accept Mr. Umanzor's version of the events. In other words, even if the jury did not believe Mr. Umanzor, the State offered no evidence that the jury could have relied upon in finding that Mr. Umanzor was not acting in self-defense when he fired the weapon. In fact, Mr. Sheppard, Sr., testified that Mr. Umanzor assisted him with his son after the shooting and Jason Schroeder with the Harris County Institute of Forensic Sciences testified that Mr. Sheppard's right hand tested

15

positive for gunshot residue and his left hand was inconclusive. (3 R.R. at 111-115 and 4 R.R. at 45-48).

The Court of Appeals should have considered all the evidence in its analysis. The cursory evaluation of the evidence – with no consideration of the evidence supporting the defense was erroneous.

**GROUND TWO: THE COURT OF APPEALS ERRED IN AFFIRMING THE TRIAL COURT'S DENIAL OF MR. UMANZOR'S REQUESTED LESSER INCLUDED JURY INSTRUCTIONS, SPECIFICALLY INVOLUNTARY MANSLAUGHTER.**

**ARGUMENT**

The Court of Appeals erred in affirming the trial court decision to deny Mr. Umanzor a requested jury instruction on involuntary manslaughter. It has been established that involuntary manslaughter and criminally negligent homicide are lesser included offenses of murder. *See Jackson v. State*, 992 S.W.2d 469, 475 (Tex. Crim. App. 1999); *Licon v. State*, 99 S.W.3d 918, 928 (Tex. App. –El Paso 2003, no pet.); *Navarro v. State*, 863 S.W.2d 191, 302 (Tex. App. –Austin 1993, pet. ref'd). The distinction between murder, involuntary manslaughter, and criminally negligent homicide is the requisite culpable mental state accompanying the offender's act. *Salinas v. State*, 644 S.W.2d 744 (Tex. Crim. App. 1983); *Navarro*, 863 S.W.2d at 204.

Involuntary manslaughter occurs when a person recklessly causes the death of another. *Tex. Penal Code 19.05(a)(1)*. A person acts with "recklessness" when he "is aware of but consciously disregards a substantial and unjustifiable risk that the

circumstances exist or the result will occur." *Tex. Penal Code 6.03(c).* In order to be guilty of murder, the defendant must act "intentionally" or "knowingly." *See Tex. Penal Code §§* 19.02, 19.05 and 19.07.

Mr. Umanzor requested the instructions based on his statement to police indicating that he was not aiming at Mr. Sheppard, but rather was just firing his weapon in the heat of the moment in an attempt to protect himself and his family. In his statement to police, Mr. Umanzor stated over and over again that his actions were motivated by his fear of being shot by Boogie or Mr. Shepherd. He stated that there was a lot of commotion and that he was next to his car when he just started shooting. The bullet fragments associated with the .45 caliber weapon where found scattered around the area suggesting that the gun was fired randomly as opposed to having been fired in the direction of a specific target. Mr. Umanzor's actions were anything but intentional and knowingly.

A defendant is entitled to an instruction on a lesser-included offense "if some evidence from any source raises a fact issue on whether he is guilty of only the lesser, regardless of whether the evidence is weak, impeached, or contradicted." *Cavazos v. State,* 382 S.W.3d 377, 383 (Tex. Crim. App. 2012). The standard may be satisfied "if some evidence refutes or negates other evidence establishing the greater offense or if the evidence presented is subject to different interpretations." *Sweed v. State,* 351 S.W.3d 63, 68 (Tex. Crim. App. 2011)(quoting *Skinner v. State,* 956 S.W.2d 532, 543 (Tex. Crim. App. 1997)).

17

Mr. Umanzor requested the instructions based on his statement to police indicating that he was not aiming at Mr. Sheppard, but rather was just firing his weapon in the heat of the moment in an attempt to protect himself and his family.

The evidence demonstrates that Mr. Umanzor, if he was guilty of anything, was guilty of involuntary manslaughter -but the jury was deprived of either option through the error of the trial court. Had they been properly charged with the lesser-included-offense, the decision would have been different. Because Mr. Umanzor clearly suffered some harm from the trial court's failure to properly charge the jury on the lesser included offenses of involuntary manslaughter, the Court of Appeals erred in failing to reverse Mr. Umanzor's conviction for murder.

**PRAYER**

For the reasons stated above, Mr. Umanzor prays that this Court grant his petition for discretionary review.

Respectfully submitted,

**ALEXANDER BUNIN**
Chief Public Defender
Harris County Texas


*/s/ Daucie Schindler*
**Daucie Schindler**
Assistant Public Defender
Harris County Texas
1201 Franklin, 13th Floor
Houston Texas 77002
(713) 368-0016
(713) 368-9247 fax
TBA No. 24013495
daucie.schindler@pdo.hctx.net

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with Tex. R. App. Proc. 9. It was prepared on a computer using 14-point Garamond type. It contains 4,323 words. Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in *Tex. R. App. Proc.* 9.4(j), may result in the Court's striking this brief and imposing sanction against the person who signed it.

*/s/ Daucie Schindler*
**DAUCIE SCHINDLER**
Assistant Public Defender

**CERTIFICATE OF SERVICE**

I certify that I electronically served a copy of this brief to the Harris County District Attorney and a copy has also been mailed to Lisa McMinn, State Prosecuting Attorney, P.O. Box 13046, Austin, TX 78711, by first class mail on May 27, 2015.


*/s/ Daucie Schindler*
**DAUCIE SCHINDLER**

Assistant Public Defender

# APPENDIX A

**Affirmed and Memorandum Opinion filed March 26, 2015.**



In The

# 𝕱ourteenth 𝕮ourt of 𝕬ppeals

## NO. 14-13-00958-CR

### JAIRO UMANZOR, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 228th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1349385**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Jairo Umanzor of murder and sentenced him to fifteen years' imprisonment. In two issues, he challenges the sufficiency of the evidence to support his conviction and asserts that the trial court erred by denying his request for lesser-included offense instructions. We affirm.

## I. BACKGROUND

On the evening of May 29, 2012, appellant shot the decedent, Reggie Sheppard, Jr., in the back. After shooting Reggie, appellant tried to help in resuscitation efforts before emergency workers arrived. Reggie's father heard appellant say, "Hey, hold on man. Don't die. Don't die. Don't die, man. Please don't die." Despite appellant's and Reggie's father's efforts, Reggie died at the scene. Appellant told the first responding officers that three black men were involved in the shooting and they left in a blue Ford. However, a neighbor implicated appellant in the shooting.

In a statement he made to police later that evening, appellant claimed that he shot at Reggie and a man called "Boogie" in defense of himself and his family because they had come to his front door armed and threatening him. Appellant asserted that, earlier in the evening, three individuals had stopped by his house looking to buy drugs. According to appellant, these individuals came looking for Reggie or Boogie, from whom appellant had bought drugs before. Appellant told police that he later went outside to smoke a marijuana cigarette and saw these three people "jump" Reggie. After jumping Reggie, the three individuals fled in their vehicle. Appellant stated he saw Reggie get up and go to Boogie's house, yelling that he was going to get a gun. According to appellant, he knew that the two were going to blame him for the fight and "come and kill" him, so he told his wife to hide with their children. Appellant stated he was in fear for his life, so he got his gun. Appellant explained to police that Reggie and Boogie came to his house and knocked on his door. He claimed he opened the door because he didn't want them to come into his house and kill him in front of his children.[1]

---

[1] Appellant later said that his front door "opened" when Reggie and Boogie were "beating" on it.

2

According to appellant, Reggie and Boogie confronted him because they were looking for the individuals who had "jumped" Reggie. Appellant claimed that Boogie put a gun in his face and threatened him; appellant claimed that Reggie also had a gun in his hand. Appellant knocked Boogie's gun out of his face and told them "don't do it." They ran away while shooting at him; appellant initially stated they shot at least twice at him. Appellant said he responded to their threat to his life and his family by crouching behind his car and shooting at Reggie and Boogie as they "scattered." Appellant explained that he was unable to see where he was shooting when he fired his gun. Later, he claimed it happened "so fast" that he couldn't remember whether they shot at him or whether Reggie actually had a gun. According to appellant's statement, after the shooting stopped, he went inside his house and told his wife to leave. He told her to take the gun and "dump it." He then went across the street to try to help Reggie. Appellant's story to police shifted incrementally throughout; when they confronted him with evidence inconsistent with his story, he made minor changes to it. However, he consistently asserted that he was in fear for his life when he got his gun and went to his front door.

One of appellant's neighbors testified that he heard a gunshot and went to his window. This witness testified that he saw appellant standing in his driveway, close to his car, with his hand extended as if firing a gun. This witness did not see appellant shooting, but he saw him positioned with his hand out and heard several gunshots. Before the neighbor saw appellant in his driveway, he saw someone running away. The neighbor was unable to tell whether the person running away was carrying a weapon. Another witness saw Reggie running across her driveway; the witness did not see Reggie carrying a gun. Finally, Reggie's father saw Reggie

3

running towards his house; he stated that Reggie was not carrying a gun and did not own a gun.

Houston Police Department (HPD) crime scene investigators discovered several spent shells and bullets at the scene. Most of the bullets and casings were .45 caliber, but they found one .40 caliber bullet near appellant's porch. HPD officers found both .45 caliber and .40 caliber bullets inside appellant's home, strewn across the floor and in a drawer in a bedside table. The manufacturer of the .40 caliber bullet found on appellant's porch matched the manufacturer of the .40 caliber bullets found inside appellant's home. An HPD firearms examiner determined that two fired .45 caliber bullets found at the scene matched the .45 caliber bullet that caused Reggie's death. This examiner also determined that six fired .45 caliber auto cartridge bullets found at the scene near appellant's driveway were fired from the same gun. The examiner stated that the .40 caliber bullet could have been fired from the same gun as the .45 caliber bullets had been, but it did not show signs of expansion that ordinarily would have been present had this occurred.

Gunshot residue (GSR) was found on both of appellant's hands and on Reggie's right hand. This GSR was consistent with activities such as firing a weapon, being in close proximity to a firearm during discharge, or handling a firearm, a fired cartridge, or some other surface bearing GSR. The manager of the Harris County Institute of Forensic Sciences, who was responsible for testing the GSR in this case, could not rule out secondary transfer of the GSR from one person to another.

A jury convicted appellant of murder, implicitly rejecting his claim of self defense. After hearing evidence at punishment, the jury assessed appellant's punishment at 15 years' confinement in the Institutional Division of the Texas

Department of Criminal Justice. The trial court entered judgment on the jury's verdict, and this appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant challenges the sufficiency of the evidence to support his conviction. In particular, he contends that a rational jury could not have found he acted intentionally or knowingly or that he did not act in self defense.

### A. Standard of Review and Governing Law

"In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt." *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013) (quotation omitted). When an appellant challenges the sufficiency of the evidence to support the jury's rejection of a self-defense claim, we similarly must determine whether "any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt." *Darkins v. State*, 430 S.W.3d 559, 565 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (citing *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991) (en banc)). The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Winfrey*, 393 S.W.3d at 768. "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011) (quotation omitted).

A person commits murder when he intentionally[2] or knowingly[3] causes the death of another person, or if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. Tex. Penal Code Ann. § 19.02(b). The State may prove a defendant's criminal culpability by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009). By statute, a firearm is a deadly weapon. Tex. Penal Code Ann. § 1.07(17)(A). "The jury may infer the intent to kill from the use of a deadly weapon unless it would not be reasonable to infer that death or serious bodily injury could result from the use of the weapon." *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). Further, in determining a defendant's guilt, a jury may consider events that occurred before, during, and after the commission of the offense. *Pitonyak v. State*, 253 S.W.3d 834, 844 (Tex. App.—Austin 2008, pet. ref'd).

Generally, a person is justified in defending against another's use of deadly force. *See Morales v. State*, 357 S.W.3d 1, 7 (Tex. Crim. App. 2011). Under the Penal Code, a person is justified in using deadly force (1) if he would be justified in using force against the other under section 9.31 of the Texas Penal Code, and (2) when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. Tex. Penal Code Ann. § 9.32(a)(1), (a)(2)(A). Section 9.31 of the Penal Code justifies a person to use force "when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against

---

[2] A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to cause the result. Tex. Penal Code Ann. § 6.03(a).

[3] A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b).

6

the other's use or attempted use of unlawful force." *Id.* § 9.31(a). Once a defendant produces some evidence of self defense, the burden shifts to the State to disprove this defense beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 913. This burden of persuasion does not require the State to produce evidence to refute the self-defense claim, but requires only that it prove its case beyond a reasonable doubt. *Id.*

Because self defense is an issue of fact to be determined by the jury, the jury is free to accept or reject the defensive issue. *Medina v. State*, 411 S.W.3d 15, 21 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Saxton*, 804 S.W.2d at 913–14). A jury's guilty verdict is an implicit rejection of the appellant's self-defense claim. *Saxton*, 804 S.W.2d at 914.

## B. Application

Appellant first asserts that he lacked the culpable mental state to be convicted of murder. Appellant does not dispute that he used a firearm in the commission of this offense; instead, he relies almost entirely on his statement to police, in which he claimed he did not intend to kill anyone and was not shooting "at" anyone.

Viewing the evidence in the light most favorable the jury's verdict, including the statement appellant made to police, the jury could have inferred appellant intentionally or knowingly caused Reggie's death or intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused Reggie's death based on the following evidence. First, appellant admitted that he intentionally got his gun and loaded it before he opened the door to Reggie and Boogie. Although appellant claimed he was in fear for his life and for his family, that fear does not undercut his intentional acts of retrieving a firearm and loading it before engaging in the encounter with Reggie and Boogie. Further,

appellant admittedly chased after Reggie and Boogie when they fled from his front porch, and appellant fired his gun in their direction. Additionally, appellant lied to the police at the scene about who the perpetrator was in an apparent effort to hide his involvement, and appellant gave the murder weapon to his wife and told her to "dump it," which she did. From this evidence, the jury could have inferred that appellant was conscious of his guilt. *See King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000) (recognizing, in a sufficiency review, the jury may consider evidence showing consciousness of guilt). Finally, appellant stated that he killed Reggie in self defense, acknowledging that he shot Reggie, but claiming he did so in fear for his life and his family. All of these factors support the jury's inference that appellant possessed the culpable mental state associated with murder.

Under these circumstances, it was not unreasonable for the jury to infer the intent to kill from appellant's use of a deadly weapon. *Jones*, 944 S.W.2d at 647. Based on the evidence and reasonable inferences therefrom, we conclude that a rational juror could have found the essential elements of murder beyond a reasonable doubt. We thus overrule this portion of appellant's first issue.

For many of these same reasons, we further conclude that a reasonable jury could have rejected appellant's claim of self defense. As noted above, although the State bears the burden of persuasion to disprove the issue of self defense, the State is not required to affirmatively present evidence that specifically refutes the defendant's self-defense evidence. *Saxton*, 804 S.W.2d at 913–14. Here, the only evidence that appellant acted in self defense comes from his statement to police. And, although he claimed, at first, that Reggie and Boogie confronted him at his front door and shortly thereafter began shooting at him, appellant later backed away from this claim and stated he was not sure if they had fired at him. Further, there is no evidence of any gunshots fired towards appellant's house; the only

8

evidence of gunshots indicates the shots were fired away from appellant's house. And, the only bullets and casings found at the scene matched the type of unfired bullets found in appellant's house. A defendant's own statement regarding his intent is not enough to render the evidence, without more, insufficient. *See Sells v. State*, 121 S.W.3d 748, 754 (Tex. Crim. App. 2003) (holding that only evidence weighing against jury finding that defendant entered home with no specific intent to commit sexual assault was defendant's own statement, which was not enough to render evidence insufficient). Appellant also admitted to leaving his home and chasing after Reggie and Boogie as they "scattered." *Cf. Cleveland v. State*, 177 S.W.3d 374, 387 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (holding that the jury could have rationally concluded that the defendant's claim of self defense was defeated when he continued to stab the complainant in the back as she lay bleeding on the floor).

As noted above, appellant instructed his wife to dispose of the gun he used to shoot at Reggie and Boogie as they fled, and he lied to police when they arrived at the scene, misdirecting them to other alleged perpetrators. This evidence indicates a consciousness of guilt. *See King*, 29 S.W.3d at 565. And even though appellant tried to help resuscitate Reggie shortly after the incident and was overheard pleading for Reggie not to die, this evidence could be viewed to bolster an inference of appellant's awareness that he had intentionally committed an act clearly dangerous to human life and was hoping that his actions would not result in Reggie's death.

In short, viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational jury could have rejected appellant's claim of self defense and found him guilty of murder beyond a reasonable doubt. Accordingly, we overrule the entirety of appellant's first issue.

## III. ALLEGED CHARGE ERROR

In his second issue, appellant urges that the trial court erred by refusing his request to include the lesser-included offenses of involuntary manslaughter and criminally negligent homicide in the jury charge.

### A. Standard of Review and Governing Law

We review alleged charge error by considering two questions: (1) whether error existed in the charge; and (2) whether sufficient harm resulted from the error to compel reversal. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). The degree of harm necessary for reversal under the second inquiry depends on whether the appellant preserved the error. *Id.* When error in the jury charge is preserved, as here, reversal is required if the error is "'calculated to injure the rights of the defendant,' which means no more than that there must be some harm to the accused from the error." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (quoting Tex. Code Crim. Proc. Ann. art. 36.19). Reversal is required if we find "some actual, rather than merely theoretical, harm from the error." *Dickey v. State*, 22 S.W.3d 490, 492 (Tex. Crim. App. 1999).

"The determination of whether a lesser-included-offense instruction requested by a defendant must be given requires a two-step analysis: (1) Is the requested charge for a lesser-included offense of the charged offense? (2) Is there trial evidence that supports giving the instruction to the jury?" *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011). The first step is a question of law and does not depend on the evidence produced at trial. *Id.* We agree with the parties that involuntary manslaughter and criminally negligent homicide are lesser-included offenses of murder: the only difference between these offenses is the culpable mental state. *See Navarro v. State*, 83 S.W.2d 191, 203 (Tex. App.—Austin 1993, pet. ref'd). Murder is committed with the culpable mental state of

10

"intentional" or "knowing," manslaughter is committed with the culpable mental state of "recklessness," and criminally negligent homicide is committed with the culpable mental state of criminal "negligence." *See* Tex. Penal Code Ann. §§ 19.02, 19.04, 19.05. Thus, the relevant inquiry in this case is whether there is some evidence that the defendant is guilty of only the lesser-included offense. *Rice*, 333 S.W.3d at 145.

## B. Application

Appellant contends that his statements to police that he did not intend to kill Reggie and that he was "crouched" behind his car when he fired in Reggie's direction, coupled with his attempts to assist in resuscitating Reggie after the shooting, are sufficient to raise the lesser-included offenses of involuntary manslaughter and criminally negligent homicide.

### 1. Involuntary Manslaughter

A specific intent to kill is not an element of involuntary manslaughter. *See Johnson v. State*, 915 S.W.2d 653, 658 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). Instead, the mental state of "recklessness" is satisfied by evidence showing that the defendant consciously disregarded a known substantial and unjustifiable risk that serious bodily injury would occur; a risk that if disregarded constitutes a gross deviation from the standard of care an ordinary person would exercise under the same circumstances. Tex. Penal Code Ann. § 6.03(c). Here, appellant stated that he retrieved and loaded his gun before answering the door when Reggie and Boogie knocked. He further stated he was aware he was pointing a loaded gun towards Reggie when Reggie was running away. After the shooting, appellant instructed his wife to dispose of his gun. He lied to police when they arrived at the scene, and appellant attempted to cast blame on others. None of this

11

evidence shows that appellant recklessly caused Reggie's death;[4] rather this evidence shows that appellant intentionally aimed a loaded deadly weapon in the direction of a fleeing individual and pulled the trigger. Appellant's statement, when viewed along with the other evidence, is not evidence that would permit a jury rationally to find that if he is guilty, he is guilty only of involuntary manslaughter. *Cf. Johnson*, 915 S.W.2d at 658–59 ("Though appellant testified that he shot Freeman only to make Freeman get 'off of him,' this is not testimony that appellant's actions were anything other than deliberate.").

Under the facts of this case, the trial court did not err by denying appellant's request for an instruction on the lesser-included offense of involuntary manslaughter.

### 2. Criminally Negligent Homicide

The record also lacks evidence that appellant is only guilty of criminally negligent homicide. That offense requires that a person act with criminal negligence, which involves "inattentive risk creation, that is, the actor ought to be aware of the risk surrounding his conduct or the results thereof." *Lugo v. State*, 667 S.W.2d 144, 147–48 (Tex. Crim. App. 1984); *see also* Tex. Penal Code Ann. § 6.03(d) (defining criminal negligence); *id.* § 19.05 (offense of criminally negligent homicide). Thus, for a defendant to be entitled to a jury charge on criminally negligent homicide, the record must contain "some evidence" that the defendant did not intend the resulting death or did not know that it was reasonably certain to occur. *Miller v. State*, 177 S.W.3d 177, 182 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). If such evidence is present, the record also must contain evidence showing that the defendant was unaware of the risk. *Id.*

---

[4] *See* Tex. Penal Code Ann. § 19.04(a).

12

Here, there is no evidence in the record that appellant did not know Reggie's death was reasonably certain to occur when he fired numerous bullets in Reggie's direction as Reggie fled. Indeed, as discussed above, appellant stated that he intentionally loaded his gun before answering the door, believing that a confrontation was about to ensue with Reggie and Boogie and intending to protect himself and his family. Appellant's neighbor saw appellant standing in his driveway, seemingly pointing a gun, and the neighbor heard gunshots as the neighbor observed an individual running away from appellant. Appellant provided no evidence that he was unaware of the risk of Reggie's death when he pointed a loaded gun and fired at Reggie while Reggie was fleeing. *See id.*; *Lafleur v. State*, 84 S.W.3d 309, 311 (Tex. App.—Beaumont 2002) (concluding that appellant was not entitled to charge on lesser-included offense of criminally negligent homicide because appellant admitted to shooting and did not claim that he was unaware of any risk), *rev'd on other grounds*, 106 S.W.3d 91 (Tex. Crim. App. 2003); *Johnson*, 915 S.W.2d at 658 (concluding that appellant was not entitled to charge on lesser-included offense of criminally negligent homicide because appellant's defense was self defense, not an unawareness of risk in exhibiting a loaded gun).

For the foregoing reasons, we conclude that the trial court did not err in denying appellant's request for a lesser-included offense instruction on criminally negligent homicide. We overrule appellant's second issue.

## IV. CONCLUSION

We have determined that sufficient evidence supports appellant's conviction for murder and that the evidence did not establish that, if appellant was guilty, he was only guilty of the lesser-included offenses of involuntary manslaughter or

13

criminally negligent homicide. We have thus overruled both of appellant's issues. Accordingly, we affirm the trial court's judgment.


/s/    Sharon McCally
       Justice


Panel consists of Chief Justice Frost and Justices Boyce and McCally.

Do Not Publish — Tex. R. App. P. 47.2(b).