**Leslie Lee MILLER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–03–00871–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 3, 2005.

Discretionary Review Refused
Aug. 31, 2005.

Jules L. Laird, Jr., The Law Office of Jules L. Laird, Jr., Houston, TX, for appellant.

Kevin P. Keating, Assistant District Attorney, Charles A. Rosenthal, Jr., District Attorney–Harris County, Houston, TX, for appellee.

Panel consists of Justices TAFT, JENNINGS, and BLAND.

## OPINION

TERRY JENNINGS, Justice.

A jury found appellant, Leslie Lee Miller, guilty of the offense of murder[1] and assessed his punishment at confinement for 25 years. In five points of error, appellant contends that the trial court erred in denying his request to instruct the jury on the lesser offense of criminally negligent homicide,[2] the evidence was legally and factually insufficient to support the jury's rejection of his claim of self-defense, and the trial court erred in denying his motion for new trial, which was based on

---

1. TEX. PEN.CODE ANN. § 19.02(b)(1), (2) (Vernon 2003).

2. TEX. PEN.CODE ANN. § 19.05(a) (Vernon 2003).

his claim of ineffective assistance of counsel. We affirm.

## Background

David Weber, an automobile painter and body shop worker, testified that on April 17, 2002, at approximately 2:30 p.m., appellant and John Carter came to Weber's place of work because appellant wanted Weber to go to the home of Robert Ray Broussard, the complainant, and to wet-sand a car so that it could be buffed. When Weber told appellant that he could not sand the car until later that evening, appellant became irate. After appellant had entered his pickup truck to leave, Weber heard appellant's cellular telephone ring and then overheard appellant speaking with the complainant. Weber characterized appellant's mood as angry as appellant and the complainant argued over money. After appellant had ended the conversation with the complainant, Carter told appellant, "We got a piece. We can take care of that." Appellant then responded, "Yes. We do have a nine in the truck." Weber explained to the jury that appellant's reference to a "nine" meant that appellant had a nine millimeter pistol.

Paula Ritter, who was the complainant's girlfriend, testified that the complainant ran an automobile body shop behind the house in which she and the complainant lived. She further testified that on April 17, 2002, she heard the complainant speaking on a telephone with appellant. She explained that appellant owed the complainant $1,000 and that the complainant intended to sell a firearm that appellant had given to the complainant as collateral. Later, at approximately 3:00 p.m., Ritter looked out her window and saw appellant drive his pickup truck to the complainant's body shop and park in the third bay. When she subsequently looked out the window again, she saw what appeared to

be an injured child walking in front of the shop and appellant's truck speeding away "fast." When Ritter walked outside to help the person with the broken arm, she found that he was the complainant and that he had been shot.

Baytown Police Officer S. Hedger testified that he arrived on the scene shortly after the shooting and found two shell casings in the body shop. Baytown Police Detective T. Pasquale testified that on April 18, 2002, at approximately 1:00 a.m., he found a disassembled handgun and two magazines buried in the backyard of the house of appellant's parents. Ballistic tests performed by Deputy B. Bruns of the Harris County Sheriff's Department showed that the shell casings found in the body shop and the bullet removed from the complainant's body came from the handgun recovered from the backyard. Assistant Harris County Medical Examiner H. Narula testified that the complainant died from a single gunshot wound that traveled through the complainant's arm and entered his chest. Police officers arrested appellant on April 18, 2002 without incident in Louisiana.

Appellant testified that he and Carter went to the complainant's body shop to talk business and to retrieve a gun that the complainant had previously borrowed from appellant. When appellant asked the complainant to return the gun, the complainant responded by stating, "Well, I will tell you what. You want your gun? I am going to give you your gun, but you are not going to like the way that I am going to give it to you." The complainant retrieved something from behind a Suburban, and, as he walked back toward appellant, appellant shot the complainant. Appellant testified that he fired his handgun once in self-defense because he thought that the complainant had a gun.[3]

---

3. Baytown Police Officer S. Doris testified     that when he arrived at the body shop, some-

Carter testified that appellant and he delivered paint and lacquer thinner to the complainant at his shop. When appellant asked for his gun from the complainant, the complainant replied, "I'll give you your gun back, but it is not how you want it." After the complainant had walked around a corner with a black object in his hand, appellant shot the complainant and said, "What was I supposed to do? He had a gun." On cross-examination, Carter admitted that he had buried the gun and the magazines at appellant's direction while appellant burned his clothes.

### Lesser Included Offense

■ In his first point of error, appellant argues that the trial court erred in denying his request to instruct the jury on the lesser offense of criminally negligent homicide because the evidence "was subject to the interpretation that the complainant was never in fact armed, and that the appellant had acted *negligently in believing* that the complainant was in fact armed." (Emphasis added.)

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual or intends to cause serious bodily injury and commits an act clearly dangerous to human life. TEX. PEN. CODE ANN. § 19.02(b)(1), (2) (Vernon 2003). A person commits the offense of criminally negligent homicide if he causes the death of an individual by criminal negligence. TEX. PEN.CODE ANN. § 19.05 (Vernon 2003). The Texas Penal Code defines the pertinent culpable mental states as follows:

(a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

(b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

. . . .

(d) A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PEN.CODE ANN. § 6.03(a), (b), (d) (Vernon 2003).

■ An offense is a "lesser included offense" if "it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission." TEX.CODE CRIM. PROC. ANN. art. 37.09(3) (Vernon 1981). A defendant is entitled to a lesser included offense instruction if (1) proof of the charged offense includes the proof required to establish the lesser included offense and (2) there is some evidence in the record that would permit a jury to rationally find that if the defendant is guilty, he is guilty only of the lesser offense. *Ferrel v. State*, 55 S.W.3d 586, 589 (Tex.Crim.App.2001). Such evidence must be directly germane to

---

one stated that a weapon was inside the residence. After getting consent to search the

home, Officer Davis recovered a handgun from inside a dresser in the master bedroom.

a lesser included offense before an instruction is warranted. *Bignall v. State*, 887 S.W.2d 21, 24 (Tex.Crim.App.1994). We must review all evidence presented at trial to make this determination. *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex.Crim.App. 1993). If the evidence raises the issue of a lesser included offense, a jury charge must be given based on that evidence, "whether produced by the State or the defendant and whether it be strong, weak, unimpeached, or contradicted." *Id.* at 672 (quoting *Bell v. State*, 693 S.W.2d 434, 442 (Tex.Crim.App.1985)). Criminally negligent homicide is a lesser included offense of murder. *See Saunders v. State*, 840 S.W.2d 390, 391 (Tex.Crim.App.1992). Thus, we consider whether some evidence exists that appellant was guilty only of criminally negligent homicide.

Appellant asserts that because the pistol that he was concerned about was found in the residence, not at the shop, and that Carter saw the complainant with only a black object in his hand, the jury was entitled to believe that the complainant was not armed and that appellant acted negligently in believing otherwise. Appellant essentially argues that he was criminally negligent in acting in self-defense.

However, "a person is justified in using force against another when and to the degree *he reasonably believes* the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force." TEX. PEN.CODE ANN. § 9.31 (Vernon 2003) (emphasis added). Moreover, a person is justified in using deadly force against another if he would be justified in using force under section 9.31, if a reasonable person in the actor's situation would not have retreated, and when and to the degree that "he reasonably believes" that the deadly force is immediately necessary to protect himself against the other's use or attempted use of

unlawful deadly force. TEX. PEN.CODE ANN. § 9.32(a) (Vernon 2003). Self-defense is a legal justification excusing otherwise criminal conduct. The question before the jury was whether it was "reasonable" for appellant to believe that the use of deadly force was immediately necessary to protect himself against the complainant's use or attempted use of unlawful deadly force, not whether appellant was criminally negligent *"in believing* that the complainant was in fact armed." (Emphasis added).

Criminally negligent homicide requires that a person act with criminal negligence, which "involves inattentive risk creation, that is, the actor ought to be aware of the risk surrounding his conduct or the results thereof, but consciously disregards that risk." *Lugo v. State*, 667 S.W.2d 144, 147–48 (Tex.Crim.App.1984) (quoting *Lewis v. State*, 529 S.W.2d 550, 553 (Tex.Crim.App.1975)). The essence of criminal negligence is the failure of the actor to perceive the risk created by his conduct. *Ybarra v. State*, 890 S.W.2d 98, 110 (Tex.App.-San Antonio 1994, pet. ref'd). In order for a defendant to be entitled to a jury charge on criminally negligent homicide, the record must contain "some evidence" that the defendant did not intend the resulting death or know that it was reasonably certain to occur. *Id.* If such evidence is present, the record must contain evidence showing that the defendant was unaware of the risk. *Id.*

Here, appellant unequivocally testified that he intentionally shot the complainant to protect himself. Likewise, Carter's testimony demonstrates that appellant intentionally shot the complainant. There is no evidence in the record that appellant did not intend the resulting death or not know that it was reasonably certain to occur. Thus, the record is also devoid of any evidence that appellant was unaware of any such risk. We conclude that no evi-

dence was presented that would permit a jury to rationally find that if appellant was guilty of an offense, he was guilty only of the offense of criminally negligent homicide.

Accordingly, we hold that the trial court did not err in denying appellant's request to instruct the jury on the lesser offense of criminally negligent homicide. *See Lafleur v. State*, 84 S.W.3d 309, 311 (Tex. App.-Beaumont 2002) (concluding that appellant was not entitled to charge on lesser included offense of criminally negligent homicide because appellant admitted to shooting and did not claim that he was unaware of any risk), *rev'd on other grounds*, 106 S.W.3d 91 (Tex.Crim.App. 2003); *Johnson v. State*, 915 S.W.2d 653, 658 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd) (concluding that appellant was not entitled to charge on lesser included offense of criminally negligent homicide because appellant's defense was self-defense, not an unawareness of risk in exhibiting a loaded gun).

We overrule appellant's first point of error.

### Sufficiency of the Evidence

■ In his second and third points of error, appellant argues that the evidence is legally and factually insufficient to support the jury's rejection of his claim of self-defense because "the State never rebutted [his] assertion of self-defense beyond a reasonable doubt."

■ A defendant has the burden of producing some evidence to support a claim of self-defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex.Crim.App.2003). Once the defendant produces such evidence, the State then bears the burden of persuasion to disprove the raised defense. *Id.* The burden of persuasion is not one that requires the production of evidence; rather, it requires only that the State prove its case beyond a reasonable doubt. *Id.* When a fact finder determines that the defendant is guilty, there is an implicit finding against the defensive theory. *Id.*

■ It is well-settled that when a defendant challenges the legal sufficiency of the evidence supporting a fact finder's rejection of a defense such as self-defense in a murder case, "we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt." *Saxton v. State*, 804 S.W.2d 910, 914 (Tex.Crim.App.1991).

■ When a defendant challenges the factual sufficiency of the evidence supporting a fact finder's rejection of a defense, we review all of the evidence in a neutral light and ask whether the State's evidence taken alone is too weak to support the finding and whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence. *Zuliani*, 97 S.W.3d at 595.

As noted above, a person commits the offense of murder if he intentionally or knowingly causes the death of an individual or intends to cause serious bodily injury and commits an act clearly dangerous to human life. Tex. Pen.Code Ann. § 19.02(b)(1), (2). Moreover, a person is justified in using deadly force against another if he would be justified in using force under section 9.31, if a reasonable person in the actor's situation would not have retreated, and when and to the degree "he reasonably believes" that the deadly force is immediately necessary to protect him-

self against the other's use or attempted use of unlawful deadly force. TEX. PEN. CODE ANN. § 9.32(a).

In regard to both his legal and factual sufficiency points, appellant directs our attention to his and Carter's testimony that the complainant threatened appellant and that appellant "believed that the complainant obtained a pistol and was about to use it against him." He also argues generally that it was not reasonable for him to retreat "where at the moment the deadly force was required the appellant could not have safely left the complainant's shop."

However, Weber testified that when appellant left Weber's place of work after his argument on the telephone with the complainant, appellant was angry and made explicit reference to his nine millimeter pistol after Carter had stated, "We got a piece. We can take care of that." Ritter established that the complainant intended to sell a firearm that appellant had left him as collateral. It was this firearm that appellant demanded from the complainant at the time of the shooting. After the shooting, Ritter saw appellant's truck speeding away. Baytown Police officers established that the gun that appellant used to shoot the complainant had been disassembled and buried in the backyard of the home of appellant's parents. Also, Carter testified that he had buried the gun and the magazine at appellant's direction while appellant burned his clothes. Moreover, appellant left Texas and was arrested in Louisiana the day after the shooting.

Although appellant testified that the complainant had a gun, police officers did not find a handgun in the body shop or anywhere near the complainant. Rather, the officers found a handgun inside Ritter's house. Moreover, Detective Rupf, a Louisiana police officer, testified that he took appellant's statement the day after the shooting and that appellant did not mention that the complainant had a gun. Finally, other than making a general argument, appellant does not direct us to any evidence in the record on the issue of retreat. He simply presented no testimony that he could not have retreated from the complainant.

Based on all of the evidence presented at trial, viewed in the light most favorable to the verdict, we hold that a rational jury could have found the essential elements of the offense of murder beyond a reasonable doubt and also could have found against appellant on the self-defense issue. In regard to the factual sufficiency of the evidence, we note that the jury's decision to accept or to reject appellant's claim of self-defense ultimately hinged on appellant's credibility. Moreover, appellant's flight immediately after the shooting and his attempts to hide evidence constitute circumstantial evidence of his guilt. *See Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim.App.1979) (holding that flight alone is insufficient to support guilty verdict, but is circumstance raising inference of guilt). After reviewing all of the evidence in a neutral light, we hold that the State's evidence, taken alone, is not too weak to support the jury's finding of guilt and rejection of appellant's self-defense claim and that the proof of appellant's guilt is not against the great weight and preponderance of the evidence. Accordingly, we further hold that the evidence is legally and factually sufficient to support the jury's finding of guilt and rejection of appellant's claim of self-defense.

We overrule appellant's second and third points of error.

### Ineffective Assistance of Counsel

In his fourth and fifth points of error, appellant argues that the trial court erred in denying his motion for new trial, which was based on his claim of ineffective

assistance of counsel.[4] Appellant asserts that his trial counsel provided ineffective assistance by failing to produce a signed, original affidavit to effectively impeach the testimony of David Weber.

We review a trial court's denial of a motion for new trial for an abuse of discretion. *Charles v. State*, 146 S.W.3d 204, 208 (Tex.Crim.App.2004). Both the United States and Texas Constitutions guarantee an accused the right to assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *see* TEX.CODE CRIM. PROC. ANN. art. 1.05 (Vernon 1977). This right includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex. Crim.App.1997). To prove ineffective assistance of counsel, an appellant must show that (1) trial counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms and (2) the result of the proceeding would have been different but for trial counsel's deficient performance. *Strickland*, 466 U.S. at 688–92, 104 S.Ct. at 2064–67; *see also Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App.1999). An appellant has the burden of proving his claim by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim.App.1998). We apply a strong presumption that trial counsel was competent. *Thompson*, 9 S.W.3d at 813. We presume that counsel's actions and decisions were reasonably professional and motivated by sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App.1994).

As noted above, Weber testified that on the day of the shooting, he overheard a heated telephone conversation between appellant and the complainant. After appellant finished his conversation with the complainant, Weber testified that Carter stated, "We got a piece. We can take care of that." Appellant responded, "Yes. We do have a nine in the truck." Weber testified that the reference to a nine meant that appellant had a nine millimeter pistol.

During cross-examination, appellant's counsel asked Weber whether he had given an earlier written statement to appellant's investigator wherein he stated that Carter was the individual who had made the reference about the "nine" in the truck. Weber agreed that he had given a written statement to the investigator, but disagreed that Carter had actually made the statement about the nine millimeter in the truck. Appellant's counsel then attempted to impeach Weber with an affidavit that he had previously given to the investigator, Alan Steuart. After reviewing the unsigned affidavit, Weber stated that his actual, signed affidavit did not resemble the unsigned affidavit presented to him by appellant's counsel.

During re-direct examination, Weber repeated that appellant had stated that there was a "nine in the back [of the truck]." Appellant's counsel later presented the testimony of Steuart, who told the jury that Weber's signed, original affidavit stated that it was Carter who had actually

---

4. In his fourth point of error, appellant argues that he received ineffective assistance of counsel as a matter of federal constitutional law. In his fifth point of error, appellant argues that he received ineffective assistance of counsel as a matter of state constitutional law. We address these points together because the standards are identical. *See Hill v. State*, 625 S.W.2d 803, 806 (Tex.App.-Houston [14th Dist.] 1981), *aff'd*, 640 S.W.2d 879 (Tex. Crim.App.1982). In his fifth point of error, appellant asks this Court to re-adopt the ineffective assistance of counsel test cited in *Ex parte Duffy*, 607 S.W.2d 507 (Tex.Crim.App. 1980), *overruled*, *Hernandez v. State*, 988 S.W.2d 770 (Tex.Crim.App.1999). We decline to do so.

stated that there was a "nine" in the truck. However, Steuart did not have the signed, original affidavit. Appellant argues that his trial counsel acted deficiently because he did not have the signed, original affidavit to properly impeach Weber.

During the hearing on the motion for new trial, appellant's trial counsel testified that appellant's former counsel had given him the complete file and that the file did not contain the signed, original affidavit made by Weber. Thus, appellant's trial counsel had Steuart testify that the unsigned copy of the affidavit, presented to Weber during his testimony, was a true and correct copy of Weber's signed, original affidavit.

Here, appellant's trial counsel informed the jury of the discrepancy between Weber's affidavit and his trial testimony. Appellant's trial counsel cross-examined Weber about his inconsistent statement, which alerted the jury to a variation in Weber's testimony. In addition, Steuart testified that the unsigned copy of the affidavit was a true and correct copy of Weber's signed, original affidavit.

We cannot conclude from this evidence that appellant's trial counsel's performance was deficient. *See Oldham v. State,* 5 S.W.3d 840, 848 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd) (holding no ineffective assistance of counsel on failure to impeach when counsel vigorously cross-examined witness). Thus, appellant did not show the trial court, by a preponderance of the evidence, that his trial counsel's representation fell below an objective standard of reasonableness based on prevailing professional norms. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2064–65; *Thompson,* 9 S.W.3d at 812. Accordingly, we hold that the trial court did not abuse its discretion in denying appellant's motion for new trial.

We overrule appellant's fourth and fifth points of error.

## Conclusion

We affirm the judgment of the trial court.