NO. _____

IN THE COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
_____

**ARTURO CHAVEZ**
                    **Petitioner,**

**V.**

**STATE OF TEXAS**
                    **Respondent.**
_____

On Appeal from the 338th Judicial District Court for
Harris County, Texas - Trial Court No. 1338052
Appeal No. 01-14-00232-CR
_____

**ARTURO CHAVEZ'S**
**PETITION FOR DISCRETIONARY REVIEW**
_____

RECEIVED IN
COURT OF CRIMINAL APPEALS

July 30, 2015

ABEL ACOSTA, CLERK

DEGUERIN, DICKSON, HENNESSY & WARD

Matt Hennessy
State Bar No. 00787677
1018 Preston, 7th Floor
Houston, Texas 77002
(713) 223-5959 Telephone
(713) 223-9231 Facsimile

ATTORNEY FOR PETITIONER

July 29, 2015

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

Table of Contents……………………………………….. ii

Table of Authorities…………………………………... iii

Statement Regarding Oral Argument…………………………. 1

Statement of the Case…………………………………. 1

Statement of Procedural History…………………………… 2

Grounds for Review…………………………………… 2

Argument…………………………………………… 3

Conclusion………………………………………….. 18

Certificate of Service………………………………….. 19

Appendix A

# TABLE OF AUTHORITIES

Cases

*Castillo v. State,* 221 S.W.3d 689 (Tex. Crim. App. 2007)………………  8

*Cruz v. State*, 690 S.W.2d (Tex. Crim. App. 1985)………………………  11

*Hernandez v. State,* 939 S.W.2d 173, 178 (Tex. Crim. App. 1997)……...  10

*Hernandez v. State*, 1997 WL 33641950 at *6 (Tex. App.—Corpus
   Christi 1997, no pet.)……………………………………………………  11

*Holladay v. State,* 709 S.W.2d 194, 199–200 (Tex. Crim. App. 1986)…..  4

*McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997)………….  3

*Miller v. State,* 177 S.W.3d 177 (Tex. App.—Houston [1st Dist.] 2005,
   pet. ref'd)……………………………………………………………..  8

*Mitchell v. State*, 650 S.W.2d 801, 807 (Tex. Crim. App. 1983)…………  4

*Munoz v. State*, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993)…………..  12

*Simmons v. State,* 282 S.W.3d 504, 508 (Tex. Crim. App. 2009)………..  4

*Smith v. State,* 332 S.W.3d 425, 442 (Tex. Crim. App. 2011)……………  3

*Wincott v. State,* 59 S.W.3d 691 (Tex. App.—Austin 2001, pet. ref'd)….  12


Statutes

Article 38.14 of the Texas Code of Criminal Procedure………………….  3

**Statement Regarding Oral Argument**

This is an accomplice-witness case. The court of appeals misapplied the standard of review in concluding that there was non-accomplice testimony that tended to connect Petitioner "with planning the commission of the offense" (Appendix A at 9), and it separately failed to assess the reasonableness of the jury's chosen view of the non-accomplice testimony. Oral argument will assist the Court in addressing the grounds raised in this petition.

**Statement of the Case**

A jury convicted Petitioner of murder based on accomplice-witness testimony and sentenced him to life in prison. CR. 6 (Indictment); 609-10 (Judgment). The court of appeals held that there was sufficient non-accomplice evidence that tended to connect Petitioner to the commission of the offense and affirmed the conviction. This petition identifies the flaws in the court of appeals' reasoning. The lower court was able to affirm the conviction only by using a standard that diminished the burden that the State must carry in an accomplice-witness case, and by failing to consider whether the jury's chosen view of the evidence was reasonable.

1

## Statement of Procedural History

The court of appeals issued its decision on May 28, 2015. No motion for rehearing was filed. This Court granted an extension of time to file a petition until July 29, 2015.

## Grounds for Review

1. Whether the court of appeals correctly applied the standard of review in assessing the sufficiency of the non-accomplice evidence in this case.

2. Whether, under the correct application of the standard of review, non-accomplice testimony that Petitioner once borrowed a friend's car tended to connect Petitioner to the commission of the crime when there was no non-accomplice evidence that tied the car to the offense.

3. Whether the court of appeals assessed the reasonableness of the jury's chosen view of the non-accomplice evidence before deferring to that view.

4. Whether the court of appeals erred in misinterpreting the quality and quantum of evidence necessary to corroborate accomplice testimony in a murder case.

5. Whether it was reasonable to conclude that non-accomplice evidence that Petitioner assisted the perpetrators only after the murder had been committed sufficiently connected him to the actual commission of that offense.

**Argument**

**A.    Reasons for Review.**

While the court of appeals correctly identified the standard of review in an accomplice-witness case, it failed to rigorously adhere to that standard in its review of this case.  Under Article 38.14 of the Texas Code of Criminal Procedure, "A conviction cannot be had on the testimony of an accomplice witness unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."  The court of appeals expressly accepted that it must "eliminate from consideration the accomplice testimony and then examine the other inculpatory evidence to ascertain whether the remaining evidence tends to connect the defendant with the offense."  Appendix A at 3 (quoting *McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997)).  But the court failed to eliminate the accomplice's testimony in its review of the non-accomplice evidence despite this acknowledgement.  If the court of appeals had properly applied the standard of review, it would have concluded that there was no non-accomplice evidence to support a finding that Petitioner participated in "planning the commission of the offense."  *See* Appendix A at 9.  Such a conclusion would have diminished "the combined force of the non-accomplice evidence," and weakened the already shaky ground upon which the verdict rested.  *See id.* at 4 (citing *Smith v. State,* 332 S.W.3d

3

425, 442 (Tex. Crim. App. 2011); *Mitchell v. State*, 650 S.W.2d 801, 807 (Tex. Crim. App. 1983)).

This Court has held that "when there are two permissible views of the evidence (one tending to connect the defendant to the offense and the other not tending to connect the defendant to the offense), appellate courts should defer to that view of the evidence chosen by the [jury]." *Simmons v. State,* 282 S.W.3d 504, 508 (Tex. Crim. App. 2009). Such "[c]onfirmation as to the defendant's connection to the offense, however, should be by independent evidence from which the jury may *reasonably* be satisfied." *Id.* (quoting *Holladay v. State,* 709 S.W.2d 194, 199–200 (Tex. Crim. App. 1986) (emphasis added)). The court of appeals seems to have misread *Simmons'* guidance regarding different "permissible views of the evidence" to mean that it should defer to the jury's chosen view of the evidence without regard to whether the jury's view was reasonable. If reasonableness of the jury's view had been part of the court's analysis, the evidentiary shortcomings identified in Petitioner's opening brief and his reply brief should have led the court to conclude that the non-accomplice evidence regarding Petitioner's conduct after the murder did not tend to connect him to the offense. *See* App. Brief at 15-21; Reply Brief at 5-16. However, none of those evidentiary deficiencies is addressed in the court's opinion. Proper application of the law in this case should have resulted in an acquittal.

4

**B.   Background.**

The decedent, Santiago Garcia, was shot and killed on a sidewalk near a park in Baytown in November 2004.  Appendix A at 2.  The Baytown Police Department began their investigation immediately, but the case soon went cold.  *Id.*  A break came in 2011 when new information led the Baytown investigators to interview Daniel Torres.  *Id.*  Torres confessed to participating in Garcia's murder in the interview, and he implicated Petitioner and Carlos Barrera.  *Id.*  Petitioner, Barrera and Torres were charged with Garcia's murder soon thereafter.

Torres agreed to testify against Petitioner in return for the State's recommendation for a fifteen-year sentence.  *Id.*  Torres told the jury that he drove Barrera to the park in a borrowed, green Impala where Barrera shot Garcia.  *Id.* at 2, 9.  Torres drove from the scene with Barrera, and they later met up with Petitioner at his father's home.  *Id.* at 10.  According to Torres, he and Barrera committed the murder at Petitioner's direction, but no non-accomplice evidence supported his claim.  *Id.* at 2, 9.

**C.   Non-Accomplice Evidence.**

The court of appeals held that the "combined force" of the testimony of three non-accomplice witnesses tended to connect Petitioner to the commission of the offense, and therefore the non-accomplice evidence together with Torres's testimony provided a sufficient basis for the conviction.  *See id.* at 3, 5-7.  Only one of these

5

non-accomplice witnesses, W. Navarrete, provided testimony regarding Petitioner's conduct before the murder. *Id.* at 5. The testimony of the other two witnesses, F. Velasquez and C. Benavidez, was limited to events that occurred after the commission of the offense. *Id.* at 5-7.

### 1. Non-Accomplice Evidence—Before the Murder.

Navarrete testified that Petitioner borrowed his green Impala on one occasion, but he did not remember the date of the loan. *Id.* at 5. Chavez asked to borrow the car because someone owed him money, and he did not want to be seen in his own car. *Id.* Navarrete did not offer any testimony that connected his car to Garcia's murder or to Torres or Barrera—he did not know them. *See id.* at 5, 10. In assessing this testimony, the court of appeals concluded: "Although [Navarrete] could not remember the date, [his] description of events corroborated Torres's testimony about the timing and circumstances of borrowing the green Impala." *Id.* at 7. But that is not the test for determining the sufficiency of non-accomplice evidence. The test is whether non-accomplice evidence—standing alone—tends to connect a defendant to the commission of the offense. *See id.* at 4 (citing *Smith v. State,* 332 S.W.3d 425, 442 (Tex. Crim. App. 2011); *Mitchell v. State*, 650 S.W.2d 801, 807 (Tex. Crim. App. 1983)).

The only evidence that tied Navarrete's green Impala to Garcia's murder came from Torres who was an accomplice as a matter of law. *See id.* at 5 (trial court

6

instructed jury that he was an accomplice). Without Torres's testimony, all that the record supports is that Chavez borrowed Navarrete's car at some unidentifiable time in the past. There was absolutely no non-accomplice evidence to connect Navarrete's car with Garcia's murder. The fact that Chavez once borrowed it, without any additional non-accomplice evidence, did not tend to connect Chavez to the crime. The court of appeals was wrong to conclude otherwise. This failure to correctly apply the law warrants this Court's review.

## 2. Non-Accomplice Evidence—After the Murder.

The remaining non-accomplice testimony identified by the court of appeals came from F. Velazquez and C. Benavidez. *See* Appendix A at 5-7. Both of them related events that occurred after the completed offense. *Id.*

### a. F. Velasquez.

The court summarized Velazquez's testimony as follows:

Velasquez, Chavez's friend, testified that Chavez called him on November 14, 2004, the day before the murder. In the conversation, Chavez reported that Garcia had tried to break into his house. Later that night, early on November 15, Chavez called Velasquez again and said, "[T]hey had killed Garcia." Chavez told Velasquez that Barrera and Torres were on their way to Velasquez's house in Beaumont. Barrera and Torres arrived at Velasquez's house about forty-five minutes later. Chavez, his family, and his brother also arrived at Velasquez's home. Chavez, his brother, Barrera, Torres and Velasquez went into a tent on Velasquez's property. Inside the tent, Chavez tried to burn the gun with a plumber's torch; when it would not melt, Chavez took the gun apart. Chavez, Torres, and Barrera each took some of the parts, and Chavez threw a part of the gun in the water behind the house. Shortly afterward, everyone left Velasquez's house. Chavez told

7

Velasquez that he planned to go to Mexico so that "everything would cool down."

*Id.* at 5-6.

The court of appeals concluded that "Velazquez's testimony about Chavez's attempts to destroy a gun on the night of Garcia's murder tends to connect Chavez to the crime," citing *Miller v. State,* 177 S.W.3d 177 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) and *Castillo v. State,* 221 S.W.3d 689 (Tex. Crim. App. 2007). *Id.* at 7. However, neither case is on point.

*Miller* is a self-defense case. *See Miller,* 177 S.W.3d at 180. The defendant testified that he shot the complainant because he was in fear of his life. *Id.* The accomplice-witness rule is never even mentioned in that case.

*Castillo* is an accomplice-witness case, but the non-accomplice evidence in that case is vastly different than here. The court summarized the non-accomplice evidence as follows:

> The…non-accomplice testimony includes evidence that appellant was seen wearing the victim's necklace shortly after the murder, that appellant was seen with a gun and with the accomplices in the hours before the murder, that the victim made a plan just prior to his murder to meet one of the accomplices, that appellant told a fellow inmate that he and accomplices had planned a robbery, that appellant shot the victim multiple times when the victim attempted to run, that Lucinda overheard appellant admit to Teresa that he was responsible for shooting someone, and that Brown overheard a similar conversation between appellant and Teresa. This evidence is sufficient to "tend to connect" appellant with the murder and robbery. Art. 38.14.

*Castillo*, 221 S.W.3d at 693. There was also testimony that the appellant said that he had hidden a gun and a bullet-proof vest in a field. *Id.*

In stark contrast to *Castillo*, there was absolutely no non-accomplice evidence that tended to connect Chavez to events that occurred before Garcia's murder or to the murder itself.[1] The court of appeals' reference to *Miller* and *Castillo* as support for the conviction evinces a fundamental misinterpretation of the evidence in this case, and suggests that the court did not properly evaluate the reasonableness of the jury's verdict.

### b. C. Benavidez.

The other non-accomplice witness relied upon by the court of appeals was Chavez's ex-wife, C. Benavidez. The court summarized her testimony as follows:

> C. Benavidez testified that Chavez woke her up in the middle of the night of the murder, telling her that they were not safe in the house and needed to leave. Chavez, Benavidez, and their children went to a hotel and stayed there for a few hours. Then they drove to Velasquez's house in Beaumont. Benavidez remained in the parked car outside the house, but she saw Barrera and Torres from the car. She saw Chavez, Barrera, Torres, and Velasquez go inside; she remained in the car for an hour or two. Chavez and Barrera then returned to the car. Chavez drove to a pier. On the way, Chavez and Barrera discussed Garcia's murder, stating that they did him a favor because he had been doing drugs and he could be with his deceased father. When they arrived at the pier, Barrera exited the car and dropped an object into the water.

> Later that day, Chavez, Benavidez, and their children left for Mexico. They returned from Mexico two months later. Chavez openly talked

---

[1] Navarrete's green Impala provided no such connection.

9

about the murder with other people in front of Benavidez during the years between the murder and the trial.

Appendix A at. 6-7.

The court of appeals concluded:

Benavidez's testimony that Chavez moved their family in the middle of the night to a hotel, then to Beaumont and Mexico, is evidence of Chavez's flight and consciousness of guilt. Velasquez similarly testified that Chavez planned to go to Mexico until everything calmed down after Garcia's murder. Evidence of a defendant's flight may tend to connect him with a crime when combined with other corroborating circumstances. *See Hernandez v. State,* 939 S.W.2d 173, 178 (Tex. Crim. App. 1997) ("Evidence of flight and guilty demeanor, coupled with other corroborating circumstances, may tend to connect a defendant with a crime.") [(citation omitted)]; *Miller,* 177 S.W.3d at 184 (flight immediately after shooting is circumstantial evidence of guilt). Finally, Benavidez testified that Chavez took partial credit for the murder when he spoke with Barrera stating that they had done Garcia a favor by killing him.

Appendix A at 7.

As already discussed, *Miller* is not an accomplice-witness case. In *Miller*, the defendant confessed to the killing on the stand and sought to explain it. *See Miller,* 177 S.W.3d at 180. The issue under review was whether the State had sufficiently disproven the claim of self-defense. The court's analysis of the evidence in that case provides no guidance here. While *Hernandez* is an accomplice-witness case, the court of appeals' reliance on it is misplaced here as well, but for different reasons.

3.    ***Hernandez v. State*.**

10

*Hernandez* is an accomplice-witness case with an unusual procedural history. On initial review, the court of appeals reversed Hernandez's conviction and ordered an acquittal because the non-accomplice evidence did not tend to connect the defendant to the crime. *See Hernandez,* 939 S.W.2d at 176-77. The court of appeals relied heavily on *Cruz v. State*, 690 S.W.2d (Tex. Crim. App. 1985), in reaching this conclusion. *See Hernandez,* 939 S.W.2d at 176-77. This Court disagreed with the court of appeals' reliance on *Cruz*, reversed the court of appeals for failing to properly consider the facts before it, and remanded the case for reconsideration. *Hernandez*, 939 S.W.2d at 179. On remand, the court of appeals reversed the conviction a second time, holding that the accomplice's testimony from a prior trial should not have been admitted at Hernandez's trial. *See Hernandez v. State*, 1997 WL 33641950 at *6 (Tex. App.—Corpus Christi 1997, no pet.). Admission of that testimony violated the confrontation clause. *Id.* This Court's disagreement with the court of appeals in *Hernandez* was, therefore, based on an analysis of facts that never should have been considered by a jury in the first place. For that reason, Petitioner suggests that a court of appeals' reliance on the specific factual analysis—as opposed to general statements of law—in *Hernandez* merits cautious review.

Procedural history aside, the *Hernandez* court granted review because the lower court "failed to take into account facts which distinguish *Cruz* from the instant case and ignored caselaw which speaks directly to the significance of such facts."

11

*Hernandez*, 939 S.W.2d at 177 (citing *Munoz v. State*, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993) (noting each case must be considered on its own facts and circumstances)).  Here, review is warranted to address the court of appeals' similar failure to distinguish the facts in *Hernandez* from the facts of this case, as well as the lower court's disregard for the holdings in *Cruz* and *Wincott v. State,* 59 S.W.3d 691 (Tex. App.—Austin 2001, pet. ref'd).   *Cruz* and *Wincott* speak directly to the to the facts of this case.

> **4.**      ***Cruz v. State.***

An examination of how this Court compared the facts before it in *Hernandez* with those in *Cruz* is instructive.  The *Hernandez* court summarized the facts in *Cruz* as follows:

> No connection was shown between the rifle and pistol [Cruz] had been seen with at some, unspecified time prior to the murder, and the weapons used to kill [the victim].  The State never even proved the caliber of the murder weapons or bullets.  Similarly, the State does not explain the significance of the discovery of the Christmas gift in the truck, in connecting [Cruz] to the murder….[Cruz] was never linked to the truck, and the discovery of the truck and the Christmas gift was never connected to the murder.

> [T]he testimony only narrowed the time of death between December 24th and December 27th.  No one testified as to when they last saw [Cruz] on the victim's property or with the accomplice.  Since [Cruz] lived on the victim's property, just 200 yards from the victim's house, his presence there was of limited significance.  We stated that there was essentially nothing tending to connect [Cruz] to the offense apart from the accomplice witness testimony; the fact that [Cruz] lived near the victim and went away following the murder did not tend to connect [Cruz] to the offense.

*Hernandez*, 939 S.W.2d at 177.

Contrasting the evidence before it with that in *Cruz,* the *Hernandez* court held that "there was non-accomplice evidence that [Hernandez] was with the accomplice on the night of the offense about two hours before the murder….Witnesses Richard Cisneros and Andres Salgado also testified that they saw [Hernandez] with [the victim] around 8:00 that night." *Id.* at 178. "Cisneros further testified [Hernandez] showed him a 12–gauge sawed-off pump shotgun a few months before the murder. Dr. Dahm, the pathologist who performed the autopsy, testified that a 12–gauge shotgun was probably used to kill the victim. Officer Perez, an investigating officer in the case, also stated that he believed a 12–gauge shotgun was used to commit the murder." *Id.* The Court also noted that Hernandez "left Brownsville without explanation after the offense." *Id.* All of this led this Court to conclude that the *Hernandez* court of appeals mistakenly relied on *Cruz. See id.* at 178-79.

As in *Hernandez,* the court of appeals in this case relied on the wrong authority in reaching its conclusion. However, the court of appeals' mistake in this case was the opposite of that committed in *Hernandez.* In *Hernandez,* the court of appeals erred by concluding that the facts were similar to those in *Cruz.* Here, the court of appeals' error was in refusing to recognize that the facts in this case have more in common with *Cruz* than *Hernandez.*

Unlike *Hernandez,* there was no non-accomplice evidence placing Petitioner with Garcia near the time of the murder, and there was no evidence that Petitioner had any connection with any weapon prior to the offense. Petitioner did leave home in Baytown soon after Garcia's murder, but his flight is not analogous to Hernandez's flight from Brownsville. Hernandez left after the murder and he was indicted shortly thereafter. *Id.* at 175. He remained a fugitive for more than four years, and was forcibly returned to Brownsville following his arrest. *See id.* After Garcia's murder, Petitioner went to a family home in Mexico and returned two months later. *See* Appendix A at 7. He lived in Baytown until his arrest in 2012, more than seven years after the offense.

In *Cruz,* there was evidence that Cruz was on the victim's property at the time of the murder. *See Cruz*, 690 S.W.2d at 248, 250-51. But the *Cruz* court found that evidence to be only a slight connection at best because Cruz lived there. *Id.* at 250-51. That connection was not substantial enough to make Cruz's flight to Mexico immediately after the murder a significant fact in the Court's analysis, despite the fact that Cruz was arrested when he tried to cross the border in California. *Id.* at 248, 250-51. Here, there was absolutely no evidence—accomplice, non-accomplice, direct or circumstantial—that Petitioner was at or near the scene of Garcia's murder. Consequently, Petitioner's travel to Mexico after Garcia's murder is even less significant than Cruz's immediate flight. *See id.* at 250-51.

14

Cruz and Hernandez were accused of being the primary actors—they were accused of actually shooting the victims. In both cases, there was evidence that Cruz and Hernandez possessed firearms similar to those used to commit the crimes before the crimes were committed. *See Hernandez,* 939 S.W.2d at 177-78. Petitioner was not accused of being the primary actor, and there was no evidence that he possessed a firearm of any kind prior to Garcia's murder. These facts further distinguish *Hernandez* from this case, and they tend to distance this case from *Cruz* as well. There are fewer connections between Petitioner and the offense than were present in *Cruz*—a case that resulted in an acquittal. The court of appeals' reliance on *Hernandez* was misplaced. The court should have been guided by *Cruz*.

**5.      *Wincott v. State.***

The court of appeals also erred in not recognizing the import of the factual analysis in *Wincott v. State,* 59 S.W.3d 691 (Tex. App.—Austin 2001, pet. ref'd). Drawing further on C. Benavidez's testimony, the court of appeals noted that she "testified that [Petitioner] took partial credit for the murder when he spoke with Barrera stating that *they* had done Garcia a favor by killing him." Appendix A at 8 (emphasis added). That actual testimony regarding this point was ambiguous, and Petitioner's brief and reply brief directed the court of appeals' attention to *Wincott* to assist in determining how to deal with such testimony. *See* Pet. Corrected Brief

15

at 16-17; Pet. Reply Brief at 14-16. However, the court of appeals dismissed its applicability.

Benavidez claimed to have heard a conversation between Petitioner and Barrera soon after they left Velazquez's house. She testified as follows:

> [Petitioner and Barrera] were saying things like, you know, they did [Garcia] a favor because he was like gone already, like I guess [Garcia] had been doing drugs or something. And they were talking about that they did him a favor and nobody cared about him. They said something like the only person that cared about him was his dad and he was gone and now [Garcia] could be with his dad.

8 RR. 116. When asked to recount any other conversations she overheard regarding the murder, she said "I don't remember exactly what was said." 8 RR. 122. Benavidez never testified that Petitioner claimed responsibility for Garcia's murder. She never testified that Petitioner said that "I" or "we" did it.

In *Wincott*, a woman testified about a conversation that she had with the defendant about the string of robberies he was accused of committing. *Wincott*, 59 S.W.3d at 701. The woman said that Wincott told her that "he had done some bad things and…express[ed]…relief over being arrested." *Id.* The State admitted letters from Wincott to the same woman in which he similarly "express[ed] sorrow for the bad things he had done." *Id.* The State also admitted a letter from Wincott to a second woman in which he told her that "they should not talk about his arrest because he was ashamed of it." *Id.* The court concluded that this evidence was inconclusive at best. *Id.* at 701. The court observed:

16

> In their vague context—a conversation involving various subjects any of which could be construed as "bad things"—[Wincott's] statements do not tend to connect him to the crimes with which he was charged. At most, they raise a mere suspicion that he is referring to his participation in the robberies. As noted, even a strong suspicion is insufficient to satisfy article 38.14.

*Id.* at 702.

Wincott's statements were more clear and more direct than those attributed to Petitioner in this case. Wincott claimed personal responsibility and expressed remorse for personally committing misdeeds in a conversation about the robberies he was accused of at the time. In contrast, Petitioner did not say that he did anything. He said "they" did it. Wincott's statements were held to be insufficient corroboration, and the court acquitted him. *Id.*

Petitioner made these points regarding *Wincott*'s holding to the court of appeals but the court dispensed with the case, stating that *Wincott* "held that the non-accomplice testimony in that case connected the defendant to the accomplice and other suspects but did not connect him to the offense itself." Appendix A at 9. The court did not address whether, in light of *Wincott*, a jury could have reasonably determined that Benavidez's vague testimony amounted to Petitioner taking partial credit for Garcia's murder. Nor did the court explain exactly what part of the murder a jury could have reasonably concluded that Petitioner supposedly took credit for.

The court of appeals erred in failing to be guided by *Cruz,* and it erred by dismissing the guidance offered by *Wincott* as well.

17

**D.** **Conclusion.**

Navarrete's testimony that Petitioner borrowed his green Impala did not tend to connect Petitioner to Garcia's murder because there was no non-accomplice evidence connecting the car to the offense. The court of appeals was able to conclude otherwise only by misapplying the law. The court also failed to correctly identify controlling caselaw, and distinguish this case from *Hernandez*. Review is warranted to address the court of appeals' errors.

Respectfully submitted,

DEGUERIN, DICKSON, HENNESSY & WARD

*/s/Matt Hennessy*
State Bar No. 00787677
matt @deguerin.com
1018 Preston, 7th Floor
Houston, Texas 77002
(713) 223-5959 Telephone
(713) 223-9231 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been delivered to the following parties via electronic filing on July 29, 2015:

Kimberly Stelter
Assistant District Attorney
1201 Franklin, Suite 600
Houston, Texas 77002

Lisa McMinn
State Prosecuting Attorney
P O Box 13406
Austin, Texas 78711

*/s/Matt Hennessy*
Matt Hennessy



Opinion issued May 28, 2015



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00232-CR

———————————

**ARTURO CHAVEZ, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 338th District Court
Harris County, Texas
Trial Court Cause No. 1338052**

---

## MEMORANDUM OPINION

A jury found Arturo Chavez guilty of the offense of first degree murder. *See*

TEX. PENAL CODE ANN. § 19.02 (West 2014). The trial court assessed his

punishment at life imprisonment. *Id.* § 12.32 (West 2014). On appeal, Chavez

contends that the non-accomplice evidence adduced at trial is legally insufficient to corroborate the accomplice testimony presented and to connect Chavez to the crime. He further contends that the evidence is legally insufficient to establish his guilt. We hold that the evidence is legally sufficient and therefore affirm.

## Background

In November 2004, Daniel Torres, Carlos Barrera, and Santiago Garcia worked for Chavez. One night, Garcia was shot and killed in a street near a Baytown park. The Baytown Police Department investigated the murder, but it never charged anyone with the commission of a crime.

About seven years later, in 2011, Detective Reyes from the Baytown Police Department received new information about the murder from an FBI agent. Reyes contacted Torres. During an interview with Reyes, Torres admitted to playing a role in the murder; he implicated Chavez and another person, Carlos Barrera. Torres pleaded guilty to a murder charge and agreed to testify for the State as an accomplice-witness in exchange for a recommendation of fifteen years in prison.

At Chavez's trial, Torres testified as an accomplice-witness. He testified Barrera shot Garcia but that Chavez had directed and planned the murder. As non-accomplice witnesses, W. Navarrete testified that he loaned Chavez a car that matched Torres's description of the getaway car used in the commission of the offense; F. Velasquez testified that Torres, Barrera, and Chavez tried to destroy a

2

gun on the night of the murder at Velasquez's house; and C. Benavidez testified about Chavez's actions on the night of the murder and his later conversations about it.

## Discussion

Chavez contends that the non-accomplice witness evidence adduced at the trial does not sufficiently corroborate Torres's testimony. He further contends that there is insufficient evidence to establish his guilt, but he similarly argues the sufficiency of the non-accomplice evidence to support his argument.

### Standard of Review

Under article 38.14 of the Texas Code of Criminal Procedure, "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2013). "The test for sufficient corroboration is to eliminate from consideration the accomplice testimony and then examine the other inculpatory evidence to ascertain whether the remaining evidence tends to connect the defendant with the offense." *McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997) (citing *Burks v. State*, 876 S.W.2d 877, 887 (Tex. Crim. App. 1994)); *Rios v. State*, 263 S.W.3d 1, 7 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd). We consider the combined force of the non-

3

accomplice evidence that tends to connect the defendant to the offense. *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011) (citing *Mitchell v. State*, 650 S.W.2d 801, 807 (Tex. Crim. App. 1983)). The corroborating evidence need not be sufficient on its own to establish guilt; there simply must be other evidence that tends to connect the defendant to the crime. *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007). When there are two permissible views of the corroborating evidence, we defer to the jury's view of the evidence. *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009).

An accomplice is a person who participates in the offense before, during, or after its commission, with the requisite mental state. *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). The accomplice witness "may be an accomplice as a matter of law or as a matter of fact." *Smith*, 332 S.W.3d at 439. A witness who is indicted for the same offense as the accused is an accomplice as a matter of law. *Id.* We examine the testimony adduced at the trial in light of these legal principles.

Under the standard of review for legal sufficiency challenges, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable

4

doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009).

*Analysis*

Torres is an accomplice as a matter of law because he was convicted of murder for his participation in the shooting pursuant to a plea bargain. *See id.* The trial court thus properly instructed the jury that Torres's testimony was accomplice-witness testimony and it could not convict Chavez without other evidence tending to connect Chavez to the offense. We examine the non-accomplice testimony first.

**1. Non-accomplice Witness Testimony**

First, W. Navarrete testified that he owned a green Impala in November 2004 and he knew Chavez, but did not know Barrera or Torres. Navarrete once loaned the Impala to Chavez but he did not remember the date of the loan. Chavez asked to borrow the car because someone owed him money, and he did not want to be seen in his own car. When Chavez picked up the car, Navarrete noticed two other people waiting in Chavez's car. Navarrete remembered that the car was returned to his driveway before 5:00 or 6:00 the following morning.

Second, F. Velasquez, Chavez's friend, testified that Chavez called him on November 14, 2004, the day before the murder. In the conversation, Chavez reported that Garcia had tried to break into his house. Later that night, early on

November 15, Chavez called Velasquez again and said, "[T]hey had killed Garcia." Chavez told Velasquez that Barrera and Torres were on their way to Velasquez's house in Beaumont. Barrera and Torres arrived at Velasquez's house about forty-five minutes later. Chavez, his family, and his brother also arrived at Velasquez's home. Chavez, his brother, Barrera, Torres, and Velasquez went into a tent on Velasquez's property. Inside the tent, Chavez tried to burn the gun with a plumber's torch; when it would not melt, Chavez took the gun apart. Chavez, Torres, and Barrera each took some of the parts, and Chavez threw a part of the gun in the water behind the house. Shortly afterward, everyone left Velasquez's house. Chavez told Velasquez that he planned to go to Mexico so that "everything would cool down."

Finally, Chavez's ex-wife, C. Benavidez, testified that Chavez woke her up in the middle of the night of the murder, telling her that they were not safe in the house and needed to leave. Chavez, Benavidez, and their children went to a hotel and stayed there for a few hours. Then they drove to Velasquez's house in Beaumont. Benavidez remained in the parked car outside the house, but she saw Barrera and Torres from the car. She saw Chavez, Barrera, Torres, and Velasquez go inside; she remained in the car for an hour or two. Chavez and Barrera then returned to the car. Chavez drove to a pier. On the way, Chavez and Barrera discussed Garcia's murder, stating that they did him a favor because he had been

6

doing drugs and he could be with his deceased father. When they arrived at the pier, Barrera exited the car and dropped an object into the water.

Later that day, Chavez, Benavidez, and their children left for Mexico. They returned from Mexico two months later. Chavez openly talked about the murder with other people in front of Benavidez during the years between the murder and the trial.

We hold that this non-accomplice evidence sufficiently connects Chavez to Garcia's murder. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14; *Smith*, 332 S.W.3d at 442; *Simmons*, 282 S.W.3d at 508. Navarrete testified that he lent his green Impala to Chavez overnight. Although he could not remember the date, the description of events corroborated Torres's testimony about the timing and circumstances of borrowing the green Impala. Velasquez's testimony about Chavez's attempts to destroy a gun on the night of Garcia's murder tends to connect Chavez to the crime. *See Castillo*, 221 S.W.3d at 691; *Miller v. State*, 177 S.W.3d 177, 184 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (attempting to hide evidence is circumstantial evidence of guilt). Benavidez's testimony that Chavez moved their family in the middle of the night to a hotel, then to Beaumont and Mexico, is evidence of Chavez's flight and consciousness of guilt. Velasquez similarly testified that Chavez planned to go to Mexico until everything calmed down after Garcia's murder. Evidence of a defendant's flight may tend to connect

him with a crime when combined with other corroborating circumstances. *See Hernandez v. State*, 939 S.W.2d 173, 178 (Tex. Crim. App. 1997) ("Evidence of flight and guilty demeanor, coupled with other corroborating circumstances, may tend to connect a defendant with a crime.") (citing *Burks*, 876 S.W.2d at 888); *Miller*, 177 S.W.3d at 184 (flight immediately after shooting is circumstantial evidence of guilt). Finally, Benavidez testified that Chavez took partial credit for the murder when he spoke with Barrera stating that they had done Garcia a favor by killing him.

Chavez relies on cases from the Texas Court of Criminal Appeals and our sister courts to argue that the non-accomplice witness testimony presented against him at most connects him with disposal of the gun after the murder, but does not tend to connect him with planning or participating in the commission of the offense. *See Druery*, 225 S.W.3d at 500; *Cruz v. State,* 690 S.W.2d 246, 250–51 (Tex. Crim. App. 1985); *Wincott v. State,* 59 S.W.3d 691, 698 (Tex. App.—Austin 2001, pet. ref'd). These cases are distinguishable from the facts presented in this appeal in that the evidence of participation was more limited in scope. In *Druery,* for example, the Court of Criminal Appeals held that a witness was not an accomplice to the charged offense of murder where the evidence was that he assisted in the disposal of the body and the murder weapon, but no evidence connected him with the commission of the crime. 225 S.W.3d at 500. In *Cruz,* the

court concluded that the defendant's flight alone was not enough to connect the defendant to the offense. 690 S.W.2d at 250–51. In *Wincott*, the court held that the non-accomplice testimony in that case connected the defendant to the accomplice and other suspects but did not connect him to the offense itself. 59 S.W.3d at 703. In contrast, the evidence non-accomplice witness evidence in this trial tended to connect Chavez both with planning the commission of the offense (by borrowing a vehicle that would not be recognized), his participation in it (his conversation with Barrera, within earshot of Benavidez, and statements to Velasquez that "they" had killed Garcia), as well as his efforts to destroy the gun and his flight to Mexico.

Having concluded that the non-accomplice evidence sufficiently connects Chavez with the murder, we review Torres's accomplice testimony together with the other evidence adduced at trial to evaluate the legal sufficiency of the conviction.

### 2. Torres's Testimony

A person commits the offense of murder if he "intentionally or knowingly causes the death of an individual" or "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE ANN. § 19.02. "A person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to

9

promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2) (West 2014); *Nava v. State*, 415 S.W.3d 289, 293 (Tex. Crim. App. 2013).

Torres testified that Chavez engaged in smuggling immigrants from Mexico to Baytown, Texas. On November 14, 2004, Chavez joined Barrera and Torres at a hotel that they used in their illegal smuggling operation. Chavez believed that Garcia was going to "talk or snitch" and that Barrera and Torres "needed to take care of him." Chavez formulated a plan to kill Garcia and gave Barrera and Torres instructions. He told them that he would drop off Garcia at a park near the house where Garcia lived. Chavez instructed Barrera and Torres to drive to the park in a borrowed car. On the same day, Chavez, Barrera, and Torres went together to a house in the Houston area to borrow a green Impala. Torres did not know the owner of the car, but remembered picking up the car from someone's house.

Later that night, Torres drove Barrera to the park in the borrowed Impala. Torres parked the car nearby. Torres and Barrera waited in the car for about five minutes when Barrera received a phone call. After hanging up the phone, Barrera got out of the car and told Torres he would be right back. Around ten minutes later, Torres heard about seven gunshots. Barrera returned to the car and told Torres, "I shot him."

10

After the shooting, Torres drove to a small airport in Baytown as Chavez had instructed. However, they saw a Harris County sheriff patrolling and decided to meet Chavez at his father's house. Once there, Chavez instructed Torres and Barrera to drive to a house in Beaumont, where his friend Francisco Velasquez lived. Chavez told them he would meet them later.

Once Barrera and Torres reached Velasquez's house, they waited a few hours for Chavez. Chavez arrived at Velasquez's house with his brother. After Chavez arrived, he and his brother joined Barrera and Torres in a tent. Barrera gave Chavez the gun, and Chavez attempted to destroy the gun with a torch. The gun did not melt, and Torres did not see the gun after the attempt to melt it. Later, Torres drove home in the Impala. Barrera took the car from him. On the morning after the murder, Chavez met with Torres and instructed him not to tell anyone about the murder.

Viewing the evidence in the light most favorable to the verdict, we hold that legally sufficient evidence supports the jury's determination that Chavez was guilty as a party to Garcia's murder. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Laster*, 275 S.W.3d at 517.

## Conclusion

We conclude that the non-accomplice witness testimony sufficiently connects Chavez to Garcia's murder and that the evidence overall is legally sufficient to support Chavez's conviction for murder. We therefore affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Justices Keyes, Bland, and Massengale.

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Print this page

# Envelope 6281148

## Case Information

| | |
|---|---|
| Location | Court Of Criminal Appeals |
| Date Filed | 07/29/2015 04:39:10 PM |
| Case Number | |
| Case Description | |
| Assigned to Judge | |
| Attorney | Matt Hennessy |
| Firm Name | DeGuerin Dickson Hennessy & Ward |
| Filed By | Kathy Parker |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.00 |
| Total Court Case Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Grand Total | $0.00 |

## Payment

| | |
|---|---|
| Account Name | Matt Hennessy |
| Transaction Amount | $0.00 |
| Transaction Response | |
| Transaction ID | |
| Order # | |

## Petition for Discretionary Review

| | |
|---|---|
| Filing Type | EFileAndServe |
| Filing Code | Petition for Discretionary Review |
| Filing Description | |
| Reference Number | |
| Comments | |
| Status | Rejected |

## Fees

| | |
|---|---|
| Court Fee | $0.00 |
| Service Fee | $0.00 |

## Rejection Information

| Rejection Reason | Time | Rejection Comment |
|---|---|---|
| | | The petition for discretionary review does not contain a certification of compliance with T.R.A.P. 9.4(i)(3). The petition for discretionary review does not contain a copy |

| | | |
|---|---|---|
| Other | 07/30/2015 03:53:38 PM | of the court of appeals opinion [Rule 68.4(j)]. In the future please combine the separate parts of your petition into one contiguous file; do not electronically file a petition and the Court of Appeals opinion(s) or other appendices as separate documents. [Rule 9.4(j)(4)] You have ten days to tender a corrected petition for discretionary review. |

## Documents

| | | |
|---|---|---|
| *Lead Document* | PDR.pdf | [Original] |
| *Attachments* | PDR-Appendix.pdf | [Original] |

## eService Details

| Name/Email | Firm | Service Type | Status | Served | Date/Time Opened |
|---|---|---|---|---|---|
| Alan Curry<br>Curry_Alan@dao.hctx.net | | EServe | Sent | Yes | 07/30/2015 07:51:52 AM |
| Lisa McMinn<br>information@spa.texas.gov | | EServe | Sent | Yes | 07/30/2015 08:41:53 AM |